Larry BLASSINGAME,
Plaintiff-Appellant,

v.

SECRETARY OF the NAVY, Naval Discharge Review Board and Board for the Correction of Naval Records, Defendants-Appellees.

Vietnam Veterans of America,
Amicus Curiae.

No. 369, Docket 86–6037.

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1986.

Decided Jan. 26, 1987.

Stephen P. Younger, New York City (Patterson, Belknap, Webb & Tyler, Michael B. Mukasey, Harman A. Grossman, of counsel), for plaintiff-appellant.

David M. Nocenti, Brooklyn, N.Y., Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Commander Richard Philpott, Captain Michael McClosky, Office of the Judge Advocate General, Dept. of the Navy, of Counsel), for defendants-appellees.

Barton F. Stichman, Julia A. Trotter, Washington, D.C., Vietnam Veterans of America Legal Services, for Larry E. Blassingame, as amicus curiae.

Before FEINBERG, Chief Judge,
NEWMAN and MINER, Circuit Judges.

FEINBERG, Chief Judge:

This case raises a number of questions growing out of attempts by a former member of the United States Marine Corps, Larry E. Blassingame, to upgrade his discharge status from undesirable to honorable. Plaintiff Blassingame appeals from an order of the United States District Court for the Eastern District of New York, Thomas C. Platt, J., which dismissed Blassingame's complaint and granted summary judgment to defendants, the Secretary of the Navy, the Naval Discharge Review Board and the Board for Correction of Naval Records. Blassingame had petitioned the two Boards to upgrade his discharge and was denied relief. For reasons set forth below, we reverse and remand for further proceedings.

## I. Background

A. *Roles of the Boards.* Because the roles and the interrelationship of the Naval Discharge Review Board (the Review Board) and the Board for Correction of Naval Records (the Correction Board) are not well-known and are significant in this case, we describe briefly their respective functions. As provided by .10 U.S.C. § 1553(a) and accompanying regulations, 32 C.F.R. §§ 724.101–724.903, a veteran can obtain review of his discharge status from the Marines by petitioning the Review Board, which was established by the Secretary of the Navy after consultation with the Administrator of Veterans' Affairs.[1] A veteran is permitted 15 years from the date of his discharge to file a petition with the Review Board. Within that 15-year period,

---

1. 10 U.S.C. § 1553(a) provides:
 § **1553.** Review of discharge or dismissal
 (a) The Secretary concerned shall, after consulting the Administrator of Veterans' Affairs, establish a board of review, consisting of five members, to review the discharge or dismissal (other than a discharge or dismissal by sentence of a general court-martial) of any

 former member of an armed force under the jurisdiction of his department upon its own motion or upon the request of the former member or, if he is dead, his surviving spouse, next of kin, or legal representative. A motion or request for review must be made within 15 years after the date of the discharge or dismissal.

a veteran is entitled to re-petition the Review Board for further consideration, but not on the basis of the same evidence. 32 C.F.R. § 724.217.

As provided by 10 U.S.C. § 1552(a), (b) and accompanying regulations, 32 C.F.R. §§ 723.1–723.11, a veteran can also obtain review of his discharge status by petitioning the Correction Board, which was established by the Secretary of the Navy with approval of the Secretary of Defense.[2] The Correction Board is authorized to "correct any military record ... necessary to correct an error or remove an injustice." A veteran must submit a request to the Correction Board within three years of discovering the error or injustice, unless the Correction Board waives the three-year limitation in the "interest of justice." Before petitioning the Correction Board, a veteran must exhaust his administrative remedies. 32 C.F.R. § 723.3(c).

Two implications spring from the combination of the requirement of exhaustion of administrative remedies before Correction Board review and the broad power of the Correction Board to correct any military record so as to remedy an error or injustice. The first is that, in situations where the Review Board can provide the requested relief, such as an upgraded discharge, a veteran first petitions the Review Board before he requests the same relief from the Correction Board. See, e.g., *June v. Secretary of the Navy*, 557 F.Supp. 144, 146–47 (M.D.Pa.1982). See generally Lunding, Judicial Review of Military Administrative Discharges, 83 Yale L.J. 33, 40–42 (1973). In situations where the Review Board cannot grant the requested relief, a veteran may proceed to the Correction Board without first seeking relief from the Review Board. The Review Board cannot provide certain types of relief, such as revocation of a discharge, see 32 C.F.R. § 724.205, nor can it grant any relief requested after the 15–year period in 10 U.S.C. § 1553(a). The second implication is that, in cases where the Review Board has made a decision and committed an error or injustice, the Correction Board can review the Review Board decision and correct the error or injustice, subject to the three-year period of 10 U.S.C. § 1552(b). See *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir.1985), *reh'g denied*, 782 F.2d 1351 (1986); *Van Bourg v. Nitze*, 388 F.2d 557, 565 (D.C.Cir.1967).

B. *Prior Proceedings.* Blassingame enlisted in the United States Marine Corps in July 1969 when he was barely 17 years old. He had only a tenth grade education and his test scores placed him in the lowest mental category the Navy allows to enlist. Blassingame subsequently served in Vietnam. In June 1971, he was given an undesirable discharge due to his frequent confrontations with military authorities. Pursuant to 10 U.S.C. § 1553(a), Blassingame petitioned the Review Board in 1973 and again in 1977 to upgrade his discharge to honorable. His request was denied on both occasions. Pursuant to 10 U.S.C. § 1552(b), Blassingame in 1979 petitioned the Correction Board for an upgrade, which was denied on the merits in April 1981.

In November 1981, Blassingame again petitioned the Review Board. The petition was denied initially in February 1983 and then again in December 1983 after the Review Board reconsidered the matter at Blassingame's request. In February 1984,

---

**2.** 10 U.S.C. § 1552(a), (b) provides:

**§ 1552.** Correction of military records: claims incident thereto

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of Transportation may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

(b) No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request therefor before October 26, 1961, or within three years after he discovers the error or injustice, whichever is later. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

Blassingame petitioned the Correction Board, which referred the matter to the Judge Advocate General, who furnished an advisory legal opinion. After receiving Blassingame's comments on the advisory opinion, the Correction Board denied relief in June 1984.

In October 1984, Blassingame brought this suit in federal district court. His original pro se complaint named only the Secretary of the Navy as defendant and sought monetary damages. Blassingame made a claim of erroneous enlistment, alleging that he was under age when he enlisted, and a claim of wrongful discharge contesting his culpability for confrontations with military authorities and alleging racial discrimination.

After the district court appointed pro bono counsel, Blassingame filed an amended complaint in April 1985 substituting a new claim for his earlier claims. This complaint named the Secretary of the Navy, the Review Board and the Correction Board as defendants. For convenience, we shall refer to them collectively as the government. In the amended complaint, Blassingame relinquished his demand for monetary damages. He sought only judicial review of the decisions of the Review Board in 1983 and the Correction Board in 1984, alleging that "defendants acted arbitrarily and capriciously and made determinations unsupported by the evidence and contrary to law, to precedent and to defendants' internal procedures" and requesting only the equitable relief of an upgrade of his discharge from undesirable to honorable.

The government moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted; alternatively the government requested a more definite statement of Blassingame's claims. While the case was under advisement in the district court, Blassingame submitted letters to the district court raising additional claims. He reasserted his claim of erroneous enlistment and emphasized that a claim for judicial review of Board decisions was distinct from a claim for judicial review of the underlying discharge. Judge Platt dismissed Blassingame's complaint, holding that the court lacked subject matter jurisdiction over his claim of wrongful discharge and that both the applicable statute of limitations and the doctrine of laches barred his claim for review of the Review Board and Correction Board decisions. As an alternative disposition of the latter claim, Judge Platt held that the Board actions were not arbitrary and capricious and granted summary judgment to the government, even though the government had not so requested. Judge Platt also dismissed Blassingame's claim of erroneous enlistment as lacking in factual and legal merit. See *Blassingame v. Secretary of the Navy*, 626 F.Supp. 632 (E.D.N.Y.1985). This appeal followed.

In this court, Blassingame is supported by an amicus brief from the Vietnam Veterans of America, a nonprofit national organization whose purpose is to advance the interests and advocate the rights of Vietnam era veterans. On appeal, Blassingame presses only his claim for review of the Review Board and Correction Board decisions, and emphasizes that he seeks only the equitable relief of an upgrade of his discharge and no monetary damages. We find Blassingame's claim against the Correction Board is not barred by the statute of limitations or laches. We also hold that Blassingame did not receive fair notice that Judge Platt would decide that claim by summary judgment. Thus, we reverse the judgment of the district court.

We concern ourselves primarily with Blassingame's claim against the Correction Board, but not the Review Board. Blassingame has already petitioned both the Review Board and the Correction Board. As noted above, the latter Board has the authority to review the action of the former. Under the circumstances, we need review directly only the action of the Correction Board.

## II. Legal Issues

■ A. *Jurisdiction of this Court.* Amicus argues as a threshold matter that

this court has jurisdiction of Blassingame's appeal. Blassingame and the government do not address this issue in their briefs. However, this court must determine that jurisdiction exists even when the issue is not raised by the parties. See *Clarkson Co. v. Shaheen,* 544 F.2d 624, 627–28 (2d Cir.1976). The Federal Courts Improvement Act of 1982, 28 U.S.C. § 1295(a)(2), provides that the Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of appeals of final decisions of a district court "if the jurisdiction of that court was based, in whole or in part" on the Tucker Act. Under the Tucker Act, 28 U.S.C. § 1346(a)(2), district courts have jurisdiction over certain claims for monetary damages against the United States not exceeding $10,000. Since Blassingame has expressly relinquished any claim for monetary relief, and the district court's jurisdiction of the remaining claim for judicial review of the Correction Board decision was not based on the Tucker Act, we hold that the Federal Circuit does not have exclusive jurisdiction of this appeal. Therefore, this appeal is properly before this court.

■ B. *Jurisdiction of the District Court.* Apparently misunderstanding the district court's opinion, Blassingame argues that the court incorrectly found that it lacked subject matter jurisdiction to review the Correction Board decision. Although the court did not state explicitly that it had subject matter jurisdiction over this claim, it did in fact review the Correction Board decision. As the government concedes, the availability of judicial review of decisions of the Correction Board is not in doubt. See *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Harmon v. Brucker,* 355 U.S. 579, 581–82, 78 S.Ct. 433, 434–35, 2 L.Ed.2d 503 (1958). The exact source of jurisdiction, though, has not always been made plain. We find that Blassingame presents a federal question under 28 U.S.C. § 1331(a) since his claim arises under 10 U.S.C. § 1552(b), and there is no statute precluding judicial review. See *Califano v. Sanders,* 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977); *B.K. Instru-*

*ment, Inc. v. United States,* 715 F.2d 713, 723 (2d Cir.1983). Therefore, we agree with the district court's implicit finding that it had subject matter jurisdiction to review the Correction Board decision.

■ C. *Sovereign Immunity.* On the issue of sovereign immunity, the district court observed that the Correction Board is an "unincorporated federal agenc[y] which Congress has not authorized to be sued either explicitly by statute, or implicitly as the result of being the offspring of a suable entity." *Blassingame,* 626 F.Supp. at 639 n. 9. The rule that a federal agency cannot itself be sued, see *Blackmar v. Guerre,* 342 U.S. 512, 514–16, 72 S.Ct. 410, 411–12, 96 L.Ed.2d 534 (1952), no longer holds. This court in *B.K. Instrument,* 715 F.2d at 724–25, held that § 702 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 et seq., removes the defense of sovereign immunity in actions brought under the federal question statute. Although *B.K. Instrument* involved a suit against individual government officials sued 'n their official capacities, it is clear that the holding in that case should apply equally to suits against an agency in its own name. Section 703 of the APA, as amended in 1976 by the insertion of the second sentence, states:

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

The legislative history of the amendment reinforces our reading: "When an instrumentality of the United States is the real defendant, the plaintiff should have the option of naming as defendant the United States, the agency by its official title, appropriate officers, or any combination of them. The outcome of the case should not turn on the plaintiff's choice." H.R.Rep. No. 1656, 94th Cong., 2d Sess. 18, reprinted in 1976 U.S.Code Cong. & Ad.News 6121, 6138. That the agencies' sovereign immunity has been waived is also indirectly supported by the amendment, also in 1976, of 28 U.S.C. 1331(a), to explicitly permit suits against "any agency" of the United States. See *B.K. Instrument*, 715 F.2d at 724–25; see also *Church of Scientology v. Linberg*, 529 F.Supp. 945, 967–69 (C.D.Cal.1981).

■ D. *Statute of Limitations.* Congress has established a six-year statute of limitations on civil suits against the United States, 28 U.S.C. § 2401(a), which provides:

> Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

Amicus argues that this statute does not apply at all to this action because it governs only actions for damages against the United States under the Tucker Act, and Blassingame is not seeking damages and has not specifically named the United States as a defendant. Amicus apparently made these same arguments without success to the Court of Appeals for the Fifth Circuit in *Geyen v. Marsh*, 775 F.2d at 1306–07. We agree with and adopt the Fifth Circuit's thoughtful analysis of these arguments. Briefly, the Fifth Circuit noted that several circuits have rejected the claim that section 2401(a) applies only to Tucker Act actions. Further, the court found that the merger of law and equity assured that section 2401(a) covers both legal and equitable actions. As to the claim that the United States must be named as a defendant, the court noted that courts have discarded the fiction that an action alleging unlawful conduct by a federal official, or as in this case by an official and an agency, is not an action against the United States. See id.

■ The central issue regarding the running of the statute of limitations is when Blassingame's right of action to contest the Correction Board decision accrued. Blassingame argues that this right accrued when that decision was rendered. If we agree with Blassingame on this point, then this suit, based on the Correction Board decision in 1984, is within the six-year limitation period. The government's view, which prevailed in the district court, is that the limitation period runs from the time of the underlying discharge in 1971 since, according to the government, Blassingame ultimately is contesting the propriety of that action. The government therefore maintains that this suit filed in 1984 is barred by the statute of limitations.

The question of when the right to obtain judicial review of a Correction Board decision accrues under 28 U.S.C. § 2401(a) is still open in this circuit. Several other circuits have recently faced this same question. The Third, Fifth and Tenth Circuits have adopted the view advanced by Blassingame. See *Dougherty v. United States Navy Bd. for Correction of Naval Records*, 784 F.2d 499 (3d Cir.1986); *Geyen v. Marsh*, 775 F.2d 1303 (5th Cir.1985), *reh'g denied*, 782 F.2d 1351 (1986); *Smith v. Marsh*, 787 F.2d 510 (10th Cir.1986); see also *Walters v. Secretary of Defense*, 737 F.2d 1038 (D.C.Cir.1984) (denying rehearing in banc) (Wald, Mikva, JJ., concurring). The Federal Circuit favors the view urged by the government. See *Hurick v. Lehman*, 782 F.2d 984 (Fed.Cir.1986). We agree with the view taken by the Third, Fifth and Tenth Circuits.

The question of when the right to obtain judicial review of a Correction Board decision accrues is a difficult one. The government finds support for its position in the historical development of Review Boards and Correction Boards. Before Congress mandated the creation of Review Boards in 1944 and Correction Boards in 1946, a vet-

eran could upgrade his discharge only through a private bill for relief through Congress. Such bills were not subject to judicial review, except for constitutionality. See *Harmon*, 355 U.S. at 584–85, 78 S.Ct. at 436–37 (Clark, J., dissenting); *Friedman v. United States*, 310 F.2d 381, 404, 159 Ct.Cl. 1 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). The government argues that since the relief provided by Correction Boards is a substitute for private bills that were unreviewable except for constitutionality, "it is perfectly consistent" that Correction Board action should also be immune from review when suit is brought more than six years after discharge. Thus, the government contends that the burden should be on Blassingame to demonstrate that Congress intended to permit judicial review beyond the six-year limitation period beginning from the date of discharge.

The history described by the government is not without persuasive effect. However, this historical argument was raised by the dissent in *Harmon*, 355 U.S. at 584–85, 78 S.Ct. at 436–37 (Clark, J., dissenting) and was implicitly rejected by the majority since the Supreme Court did review a Review Board decision in that case, *id.* at 581–82, 78 S.Ct. at 434–35. We decline to adopt the position the government urges because the Supreme Court has held that agency action is subject to judicial review unless there is "clear and convincing evidence" that Congress intended to foreclose such review. See *Bowen v. Michigan Academy of Family Physicians*, — U.S. —, 106 S.Ct. 2133, 2135–36, 90 L.Ed.2d 623 (1986); *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Although we acknowledge the vast experience of the Federal Circuit and its predecessor regarding challenges by veterans to their discharges, we note that the leading case relied on by that circuit, *Friedman*, was decided in 1962, before it became clearer over the intervening years that there is a presump-

tion in favor of judicial review of agency action.

The essential difficulty with the government's argument is that it completely insulates from judicial review any Board decision rendered more than six years from discharge, even though Congress has authorized both the Review Board and the Correction Board to act thereafter. Congress has granted veterans 15 years from discharge to petition the Review Board, 10 U.S.C. § 1553(a). The government argues that a veteran who petitions the Review Board after year six and before year fifteen, then petitions the Correction Board within three years thereafter, 10 U.S.C. § 1552(b), and subsequently brings suit promptly in federal court, as Blassingame did, is precluded from obtaining judicial review. We find it implausible that Congress intended to deny, in such obscure manner, judicial review of Board decisions where a veteran requested relief from the two Boards within the statutory period. More important, there is no "clear and convincing evidence" of such purpose by Congress. We conclude, therefore, that the right to obtain judicial review of a Correction Board decision accrues at the time of the decision. See *Geyen*, 775 F.2d at 1309–10; *Smith*, 787 F.2d at 511–12; and *Dougherty*, 784 F.2d at 501–02. Consequently, Blassingame's suit is not barred by the statute of limitations.

We have adopted what we believe is an equitable rule in that it allows all veterans exactly six years to obtain judicial review of an adverse Correction Board decision. The position urged by the government, in contrast, would give some veterans the full six years provided by 28 U.S.C. § 2401(a), others a period of less than six years and still others no review at all, depending on the time that had elapsed between discharge and the Correction Board decision. For example, a veteran who receives an adverse Correction Board decision less than six years after discharge would have the remainder of the six-year limitation period to obtain judicial review, which can be some period of time between one day and six years. And, a veteran who receives an

adverse Correction Board decision more than six years after discharge would have no opportunity to obtain judicial review.

In pressing its contention that a veteran's right of action with respect to a wrongful discharge accrues at the time of discharge,[3] the government argues that a court reviewing a Correction Board decision cannot avoid looking into the circumstances of the discharge itself. The government emphasizes that many years or even decades may pass between discharge and Board decision, particularly in those cases where "in the interest of justice" the Board waives the three-year limitation period of 10 U.S.C. § 1552(b) on obtaining administrative relief. The government alleges that over the course of time, some of the documents and witnesses relied on in the original discharge decision may no longer be available, which would impede the government's ability to justify the discharge to a reviewing court.

The relevant standard of review set forth in the APA, 5 U.S.C. § 706, however, answers these contentions. Pursuant to that section, a reviewing court shall not set aside an agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The Supreme Court has explained:

> To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971) (citations omitted). Rarely should the court conduct a de novo inquiry into the matter being reviewed. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); *Citizens to Preserve Overton Park,* 401 U.S. at 414–15, 91 S.Ct. at 822–23. Instead, the court generally should make its decision on the basis of the factual record as it appeared before the agency. See *Florida Power & Light Co.,* 470 U.S. at 744, 105 S.Ct. at 1607.

It is true, as the government argues, that a reviewing court must take note of the facts of the underlying discharge in determining whether the Correction Board decision violates the arbitrary and capricious standard of the APA, and that in cases where documents and witnesses have been lost over time, the Board's own review of the original discharge decision may be hampered. But the power of the Board to review a petition submitted after the three-year limitation period of 10 U.S.C. § 1552(b) suggests that the interest of justice may outweigh any harm caused by an incomplete record. Moreover, the absence of documents and witnesses reasonably unavailable is not a basis for a court to set aside a Board decision because under the APA, the court should assess the lawfulness of the Board decision in light of the factual record at the time of the decision. See *Geyen,* 775 F.2d at 1309.

The government argues that Blassingame's position allows a veteran to circumvent the six-year limitation period of 28 U.S.C. § 2401(a) on a veteran's right of action with respect to a wrongful discharge simply by petitioning for Correction Board review after the six-year period, obtaining an "interest of justice" waiver for obtaining administrative relief, 10 U.S.C. § 1552(b), and then seeking judicial review of an unfavorable Board decision. However, a court's direct review of a veteran's claim of wrongful discharge is distinct from its review of a Correction Board decision refusing an upgrade. Though the factual record in some if not many instances may be similar for both types of claims, the focus of the former is on the action of discharge officials whereas the focus of the latter is on the action of the Board. Discharge officials fulfill a function different from that performed by the Correction Board and the Review Board, and apply policies and procedures in effect at the time

---

**3.** The district court in this case so held. 626 F.Supp. at 637.

of discharge. In contrast, Naval regulations specifically provide that the Review Board take into account subsequent policies and procedures when reviewing the original discharge decision. See 32 C.F.R. § 724.903 (1986). It follows, then, that in reviewing the action of the Review Board, the Correction Board "must determine whether the [Review Board] has properly applied the new standards." See *Geyen*, 775 F.2d at 1309. By obtaining judicial review of a Correction Board decision, a veteran therefore does not circumvent the statute of limitations for directly challenging the discharge itself in a judicial proceeding, but instead secures review of a separate claim for review of the agency action. See *id.* at 1306; *Smith*, 787 F.2d at 511–12.

Several other points raised by the government require less discussion. Relying on *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979), the government points out that waivers of sovereign immunity must be strictly construed and argues that in construing a statute of limitations, which is a condition of that waiver, a court should not "extend the waiver beyond that which Congress intended." However, Congress, as we have shown, has expressed its intent to permit judicial review of agency action and the construction of section 2401(a) offered by the government conflicts with that intent.

Regarding the Correction Board's discretionary review in the interest of justice of petitions submitted after the three-year period of § 1552(b), the government argues that increasing the availability of judicial review may diminish the willingness of the Board to waive the limitation. But the possibility of judicial review should have no bearing on Correction Board decisions to waive that limitation; those decisions must be made, as mandated by Congress, in the interest of justice. We expect that the

Correction Board will continue to waive the limitation where justice so requires.

Additionally, the government contends that our construction of section 2401(a) will lead to different results for litigants who bring suit in this circuit seeking only review of agency action as compared to those seeking monetary damages of $10,000 or less in addition to such review. Appeals by the former group lie in this court, where litigants would be permitted to maintain a suit filed within six years of the final agency action. On the other hand, appeals by the latter group lie only in the Federal Circuit, see 28 U.S.C. §§ 1295(a)(2), 1346(a)(2), where litigants would be permitted to maintain only a suit filed within six years of the date of discharge.[4] Though we recognize this potential for different results, we do not believe that it requires us to adopt a reading of section 2401(a) that we conclude is not supported by Congressional intent.

 E. *Laches.* In addition to relying on the statute of limitations, Judge Platt found that laches bars Blassingame's suit. 626 F.Supp. at 641 n. 12. Judge Platt presumed, based on his erroneous finding that Blassingame's right of action accrued 14 years earlier upon discharge, that Blassingame had inexcusably delayed his suit beyond the six-year statute of limitations. Judge Platt also found that the government would suffer prejudice because witnesses "would be difficult to locate and even if they were traced memories of events and facts fade after 14 years." *Id.* We have found, however, that Blassingame's right of action accrued at the time of the Correction Board decision. Since Blassingame brought suit within months of that decision, he obviously did not delay unduly. We have also noted that judicial review of a Correction Board decision generally does not involve a de novo inquiry but is based on the record as it appeared before the Correction Board. Therefore,

---

**4.** Jurisdiction of such claims for more than $10,000 lies in the United States Claims Court, pursuant to 28 U.S.C. § 1491. An appeal from

that court goes to the Federal Circuit, 28 U.S.C. § 1295(a)(3).

the defense of laches is inapplicable to Blassingame's claim.

■ F. *Summary Judgment.* Judge Platt on his own converted the government's motion either to dismiss the complaint or to require a more definite statement of Blassingame's claims into a motion for summary judgment, which the judge then granted to the government. Such a conversion is permitted where the losing party is not taken by surprise by the court's action. See, e.g., *In re G. & A. Books, Inc.,* 770 F.2d 288, 294–95 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *Cook v. Hirschberg,* 258 F.2d 56, 57–58 (2d Cir. 1958); *Villante v. Department of Corrections,* 786 F.2d 516, 520–21 (2d Cir.1986). "The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings. Resolution of this issue will necessarily depend largely on the facts and circumstances of each case." *In re G. & A. Books,* 770 F.2d at 295. In this case, the government stated explicitly in its motion papers that it "intend[s] to move for summary judgment in the event this motion to dismiss is denied." Blassingame understandably was surprised when, under these circumstances, the court acted on its own to grant summary judgment. Since the court thus deprived Blassingame of notice and an opportunity to respond to the motion for summary judgment, we hold that the grant of summary judgment was improper. See *Chandler v. Coughlin,* 763 F.2d 110, 113 (2d Cir.1985). It may be that Blassingame cannot succeed in his opposition to a government motion for summary judgment, but at least he should have a fair chance to try.

Based on the foregoing, we reverse the dismissal of Blassingame's claim against the Correction Board and the grant of summary judgment. We remand this case to the district court for further proceedings.