**Thomas L. REMPFER, et al., Plaintiffs,**

v.

**U.S. DEPARTMENT OF AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS, et al., Defendants.**

**Civil Action No. 05–2350 (JR).**

United States District Court, District of Columbia.

March 14, 2008.

Mark S. Zaid, Mark S. Zaid, PC, Washington, DC, Dale Francis Saran, Law Office of Dale F. Saran, Westerly, RI, for Plaintiffs.

Jonathan Eli Zimmerman, U.S. Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM

JAMES ROBERTSON, District Judge.

Plaintiffs Thomas L. Rempfer and Russell E. Dingle[1] were officers and pilots with the Connecticut Air National Guard ("CTANG"). Their complaint alleges that they were forced to resign after they refused to comply with an illegal order to be vaccinated for anthrax. Under the Administrative Procedure Act and the Declaratory Judgment Act, plaintiffs seek judicial review of their underlying terminations and of the orders of the Air Force Board for Correction of Military Records ("AFBCMR") denying their applications for record correction and other relief. Pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), the defendants move to dismiss the complaint. For the reasons explained below, that motion will be **granted** in part and **denied** in part.

### Background

#### A. Factual Background

In December 1997, the Department of Defense announced a policy under which all members of the armed forces would be vaccinated for anthrax. *Compl.* at ¶ 5. The Anthrax Vaccination Immunization Program ("AVIP") went into effect in March 1998. *Id.* at ¶ 6. Colonel Walter Burns, the Wing Commander of plaintiffs' CTANG unit, assigned Rempfer and Dingle to Tiger Team Alpha, whose job it was to investigate the AVIP "in order to allay unit concerns." *Id.* at ¶ 8. The Tiger Team raised concerns about what it characterized as the off-label, experimental and investigational use of Anthrax Vaccine Adsorbed ("AVA") against inhalation anthrax. Although these concerns were relayed up the chain of command by Colonel Burns, questions that Rempfer and Dingle had raised about the efficacy and safety of the vaccine were never answered to their personal satisfaction. Faced with an order to be vaccinated or be disciplined, both plaintiffs sought reassignment from CTANG to the U.S. Air Force Reserves. Rempfer was honorably discharged from CTANG on March 25, 1999, as was Dingle, on April 3, 1999. Both were immediately transferred to the Air Force Reserves.

The final Officer Performance Reports ("OPRs") completed by plaintiffs' superiors at CTANG prior to their discharges made no reference to their duties on Tiger Team Alpha or to their objections to the anthrax vaccination program. Following their discharges, both plaintiffs filed applications with the Air Force Board for Correction of Military Records asserting that

---

1. Mr. Dingle died in September 2005 and is represented in this action by Jane Dingle, the executor of his estate.

the anthrax vaccination program was illegal and that they had been improperly discharged due to their refusal to be inoculated. A.R. 0003TLR–0010TLR; A.R. 0004RED–0008RED. Both requested amendment of their OPRs to reflect their duties with Tiger Team Alpha as well as compensatory relief for back pay and lost promotions. Rempfer also sought reinstatement as a CTANG pilot. In support of their contention that the vaccination order was illegal, both applications relied upon *Doe v. Rumsfeld*, 297 F.Supp.2d 119 (D.D.C.2003), in which Judge Sullivan enjoined the Department of Defense from proceeding with involuntary anthrax vaccinations based on the conclusion that, as of December 2003, AVA had not been licensed or approved for use against inhalation anthrax.

The AFBCMR denied both plaintiffs' applications for record correction. In a letter dated April 25, 2005, the AFBCMR informed Rempfer of its conclusion that there was insufficient evidence of error or injustice to warrant amendment of his OPR and that it lacked authority to reinstate him in the CTANG. *Compl.* ¶ 20; A.R. 0008TLR–0009TLR. The Board stated the following in regard to Rempfer's constructive discharge claim:

> [T]he Board notes [that] the Chief, Administrative Law Division, states that *Doe v. Rumsfeld* is still being litigated. Therefore, it would not be prudent for the Board to take any other action on this application until the litigation has been finalized. Should the plaintiffs prevail against the Secretary of Defense, the Board would be willing to reconsider the applicant's requests. Therefore, we find no compelling basis at this time to recommend granting the relief sought in this application.

A.R. 0008TLR–0009TLR. Dingle's application was denied on the same grounds on March 6, 2006. A.R. 0003RED–0007RED. Both plaintiffs filed for reconsideration, and were notified in March 2007 that their claims had again been denied. Pls.' A.R. 0018RED–0020RED.[2] In these decisions, the Board noted developments in the *Doe v. Rumsfeld* litigation and concluded that the Doe plaintiffs "did not in fact prevail against the Secretary of Defense." Pls.' A.R. 0006TLR; Pls.' A.R. 0020RED. As such the Board found "no compelling basis to recommend granting the relief sought in this application." *Id.* On April 20, 2007, plaintiffs filed their first amended complaint in this case, seeking APA and Declaratory Judgment Act review of their underlying discharges and of the AFBCMR decisions denying their applications for record correction and other relief.

### B. Legal Framework

Background on the AFBCMR and on the contours of the *Doe v. Rumsfeld* litigation is needed in order to put the plaintiffs' claims in context.

#### 1. AFBCMR

The AFBCMR is a civilian board that is empowered under authority delegated to it by the Secretary of Defense to amend military records. 10 U.S.C. § 1552. Records may be corrected when "necessary to correct an error or remove an injustice." *Id.* at § 1552(a)(1). The Board "normally decides cases on the evidence of the record." 32 C.F.R. § 865.2(c). Although it is not an investigative body, the Board may, in its discretion, hold hearings or call for the submission of additional evidence. *Id.* In proceedings before the Board, the applicant "has the burden of providing suffi-

---

**2.** The AFBCMR's reconsideration decisions are not included in the version of the administrative record submitted to the Court by the defendants.

cient evidence of probable material error or injustice." 32 C.F.R. § 865.4(a).

### 2. *Doe v. Rumsfeld*

The plaintiffs in the *Doe* litigation were members of the armed forces who, like Rempfer and Dingle, were ordered to submit to anthrax vaccination. In a suit filed on March 18, 2003, the *Doe* plaintiffs argued that AVA was an investigational drug unapproved for use against inhalation anthrax. As such, they maintained that the AVIP violated 1) 10 U.S.C. § 1107, a law which prohibits, absent a waiver from the President, the administration of new, investigational drugs or drugs unapproved for their intended use to service members without their informed consent; 2) Executive Order 13139, 64 Fed.Reg. 54175 (Sept. 30, 1999), which states that each individual service member must give his informed consent before the Department of Defense can administer an investigational drug and that presidential waivers will be granted only "when absolutely necessary"; and 3) Department of Defense Directive 6200.2, which formally adopted these requirements. While AVA had long been licensed for use against cutaneous (skin) anthrax, the *Doe* plaintiffs' main contention was that it had not been tested or licensed for use against inhalation anthrax, protection against which was the goal of the military's vaccination program. The defendants argued that AVA's license covered use against inhalation anthrax and that, accordingly, it was not an investigational drug under the relevant FDA regulations, 21 C.F.R. § 601.25. In his December 22, 2003 opinion, Judge Sullivan sided with the plaintiffs, concluding that, given the military's intended use, "AVA is an investigational drug and a drug being used for an unapproved purpose." *Doe*, 297 F.Supp.2d at 135. Judge Sullivan granted the *Doe* plaintiffs' request for a preliminary injunction enjoining the defendants, in the absence of a presidential waiver, from inoculating service members with AVA.

Eight days after Judge Sullivan issued his preliminary injunction, the FDA took action on a proposed rule regarding AVA that had been pending for eighteen years. *See Doe v. Rumsfeld*, 341 F.Supp.2d 1, 6 (D.D.C.2004). In a final rule and order issued on December 30, 2003, the FDA found that AVA was safe and effective "independent of the route of exposure" and, consequently, should not be classified as investigational in regard to protection against inhalation anthrax. 69 Fed.Reg. 255, 260 (Jan. 5, 2004). On October 27, 2004, after finding that the FDA failed to follow notice and comment procedures required by the APA and by its own regulations, Judge Sullivan vacated this rule and order. *Doe*, 341 F.Supp.2d at 16. With the FDA's final rule and order vacated, the case reverted back to where it stood when the preliminary injunction was first issued on December 22, 2003. Given the clear statutory prohibition on forced exposure to investigational drugs, 10 U.S.C. § 1107, Judge Sullivan issued a permanent injunction, requiring that "[u]nless or until FDA follows the correct procedures to certify AVA as a safe and effective drug for its intended use, defendant DoD may no longer subject military personnel to involuntary anthrax vaccinations absent informed consent or Presidential waiver." 341 F.Supp.2d at 16.

While the case was on appeal, the FDA initiated a notice and comment period and, in December 2005, issued a new final order, "explicitly finding AVA efficacious against inhalation anthrax." *Doe v. Rumsfeld*, 501 F.Supp.2d 186, 188 (D.D.C.2007)(discussing 70 Fed.Reg. 75180 (Dec. 19, 2005)). Because the injunction remained in effect only "[u]nless and until FDA properly classifies AVA as a safe and effective drug for its intended use," *Doe*,

341 F.Supp.2d at 19, the Court of Appeals held that the injunction had dissolved by its own terms. *Doe v. Rumsfeld,* 172 Fed. Appx. 327 (D.C.Cir.2006). The appeal was dismissed as moot. *Id.* at 328.

### C. Procedural Posture

In this case, the defendants have filed a motion to dismiss. Defendants assert that Counts I and III, seeking judicial review of the plaintiffs' underlying resignations/constructive discharges, are untimely. They also argue that Count II, for APA review of the AFMCMR decisions denying record correction and other relief, fails on the merits and should be dismissed.

### Analysis

### A. Counts I and III

■ Pursuant to Fed.R.Civ.P. 12(b)(1), the defendants assert that the Court lacks subject matter jurisdiction to review plaintiffs' claims in Count I and III because they are untimely. Both counts are rooted in the same set of allegations: that plaintiffs were illegally ordered to be vaccinated with AVA and that, when they refused, they were forced out of the CTANG. While Count I is for APA review of the defendants' actions, Count III, pled under the Declaratory Judgment Act, is functionally identical in that it seeks a declaration that defendants' actions leading up to plaintiffs' purported constructive discharges were illegal. Under 28 U.S.C. § 2401(a), civil actions "commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." This limitation period applies to claims brought under the Administrative Procedure Act and the Declaratory Judgment Act. *See Impro Products, Inc. v. Block,* 722 F.2d 845, 850 n. 8 (D.C.Cir. 1983); *P & V Enters. v. United States Army Corps of Eng'rs,* 466 F.Supp.2d 134 (D.D.C.2006). Each plaintiff filed more

than six years after his discharge. Rempfer was discharged on March 25, 1999. Dingle was discharged on April 3, 1999. This action was not filed until December 8, 2005.

Plaintiffs nonetheless assert that Counts I and III are timely because 1) the statute of limitations was automatically tolled while they sought redress from the AFBCMR and 2) alleged misconduct by the defendants entitles them to equitable tolling. Neither of these assertions is correct.

■ To understand the effect of AFBCMR review on the statute of limitations, it is necessary to keep in mind that there are two kinds of claims that can be brought by a service member challenging his discharge. A claim seeking review of the underlying discharge is distinct from a claim seeking review of an adverse decision by a Corrections Board—"the focus of the former is on the action of discharge officials whereas the focus of the latter is on the action of the [Corrections] Board." *Blassingame v. Secretary of Navy,* 811 F.2d 65, 72 (2d Cir.1987) *rev'd on other grounds after remand* 866 F.2d 556 (1989). For claims challenging the discharge itself, the "§ 2401(a) limitation period begins to run when a service member's discharge is final." *Kendall v. Army Bd. For Correction of Military Records,* 996 F.2d 362, 366 (D.C.Cir.1993) (citing *Walters v. Secretary of Defense,* 725 F.2d 107, 114 (D.C.Cir. 1983)). In other words, Board of Corrections review does not delay the accrual of a cause of a action arising directly from an allegedly illegal discharge. *Walters,* 725 F.2d at 114. When the plaintiff is challenging an adverse decision by the Board, that claim "accrues at the time of the final agency decision, or the exhaustion of all administrative remedies, rather than at the time when the underlying discharge or

alleged coerced resignation occurred." *Lebrun v. England,* 212 F.Supp.2d 5, 11 (D.D.C.2002) (citing *Blassingame,* 811 F.2d at 71; *Dougherty v. United States Navy Bd. for Corr. of Naval Records,* 784 F.2d 499, 501–02 (3d Cir.1986); *Geyen v. Marsh,* 775 F.2d 1303, 1306 (5th Cir.1985); *Smith v. Marsh,* 787 F.2d 510, 512 (10th Cir.1986)). Because Counts I and III arise directly from plaintiffs' allegedly coerced resignations—which occurred more than six years ago—these claims are untimely.

 Equitable tolling is not available to the plaintiffs because the Court of Appeals "has long held that section 2401(a) creates 'a jurisdictional condition attached to the government's waiver of sovereign immunity.'" *P & V Enters. v. United States Army Corps of Eng'rs,* 516 F.3d 1021, 1026 (D.C.Cir.2008) (quoting *Spannaus v. U.S. Dep't of Justice,* 824 F.2d 52, 55 (D.C.Cir.1987)). However, even if the Court of Appeals were to reconsider and reverse its position on the jurisdictional nature of § 2401(a) in light of intervening Supreme Court precedent,[3] the plaintiffs could not show that they are entitled to equitable tolling, which is available "only in extraordinary and carefully circumscribed circumstances." *Smith–Haynie v. District of Columbia,* 155 F.3d 575, 580 (D.C.Cir. 1998) (internal citation omitted). The gist of plaintiffs' argument in favor of tolling is that "the records that would prove their constructive discharge and compelled resignations were in the possession of the military," which was "less than forthcoming about what had happened." [Dkt. 20 at 9–10]. Plaintiffs' grievance here is that it took two years, from 1999 until 2001, for Rempfer's FOIA requests to be resolved

and for him to receive all of his records. While "[e]quitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim," *Smith–Haynie,* 155 F.3d at 579, plaintiffs cannot make the requisite showing of diligence in this case. Plaintiffs have not explained how Rempfer's difficulty in receiving his records affected Dingle's claims, nor have they pointed to any action by the defendants from 2001 up until the limitations period elapsed years later in 2005 that prevented them from actively and timely pursuing their claims.

**B. Count II**

Count II asserts that the AFBCMR decisions at issue violate the APA because they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants move to dismiss this claim on the merits, arguing that plaintiffs cannot show that the AFBCMR deviated from the standards of decision-making required under the APA. *See Marshall County Health Care v. Shalala,* 988 F.2d 1221, 1226 (D.C.Cir.1993) (explaining that when an agency action is challenged, "[t]he entire case on review is a question of law" which may be resolved on a Rule 12(b)(6) motion to dismiss).

 Congress has granted the Secretary of Defense broad discretion in deciding whether to correct a military record. Under 10 U.S.C. § 1552(a), the Secretary (and, by delegation, a civilian corrections board) is authorized to act "*when he considers it necessary to cor-*

**3.** *See John R. Sand & Gravel Co. v. United States,* —— U.S. ——, 128 S.Ct. 750, 755–56, 169 L.Ed.2d 591 (2008); *Bowles v. Russell,* —— U.S. ——, 127 S.Ct. 2360, 2365–66, 168 L.Ed.2d 96 (2007); *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 93–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

rect an error or remove an injustice." *Id.* § 1552(a) (emphasis added). In certain circumstances, this statute allows the Board of Corrections to decide "that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice." *Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1514 (D.C.Cir.1989). For example, it would be within the Board's discretion "not to correct an error upon which nothing turns by reason of mootness, lack of harm to the person in question, or inability by such correction to redress the harm claim." *Id.* At the same time, the Board's discretion is not so broad as to render its decisions unreviewable—it must still "give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA." *Id.* at 1514–15; *see also Cone v. Caldera,* 223 F.3d 789, 791 (D.C.Cir.2000) (explaining that decisions of military boards of correction are subject to an "unusually deferential application of the arbitrary or capricious standard.... calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence") (internal citation and quotation marks omitted).

### 1. Rempfer's Application for Record Correction

Turning first to Thomas Rempfer's case, he requested i) that his Officer Performance Report be amended to include details of his work with Tiger Team Alpha; ii) that his discharge be documented as an illegal constructive termination; iii) that he receive "direct back pay, longevity, lost 'command pilot' rating, and reinstatement to rank commensurate with [his] position upon return, plus lost pay for lost rank"; and iv) reinstatement as a CTANG pilot. A.R. 0010TLR–0012TLR.

#### a. OPR Amendment

■ The Board denied Rempfer's request to amend his Officer Performance Report, stating that "an OPR is considered accurate as written and without rating chain support the Board is not inclined to change the report." A.R. 0008TLR. In requesting amendment, Rempfer had the burden of proving that omission of his Tiger Team duties in his OPR constitutes material error or injustice. 32 C.F.R. § 865.4(a). Before the Board and before this Court, Rempfer has failed to show that his CTANG supervisor was required to mention to his role on the Tiger Team, or that there are concrete, adverse consequences flowing from the omission of these duties. As such, the AFBCMR's refusal to amend is neither arbitrary or capricious nor otherwise in violation of law.

#### b. Reinstatement

■ The AFBCMR denied this request, explaining that it lacks the authority to require the Connecticut Air National Guard to reinstate Rempfer. A.R. 0008TLR. Rempfer, whose discharge order was signed by the Governor of Connecticut, has not shown otherwise. *See* Dkt. 11, Ex. 2 at 4. This decision will be affirmed.

#### c. Constructive Discharge and Compensatory Relief

■ In denying Rempfer's request that his (alleged) constructive discharge be documented as illegal and that he be compensated for it, the AFBCMR relied solely on the fact that "*Doe v. Rumsfeld* is still being litigated[,]" reasoning that "it would not be prudent to take any other action on this application until the litiga-

tion has been finalized." A.R. 0008TLR. In other words, rather than decide Rempfer's claim on the merits, the Board punted. In response to Rempfer's request for reconsideration, the Board made no explicit mention of constructive discharge and compensatory relief claims and instead stated the following:

> We originally agreed that should the plaintiffs in *Doe v. Rumsfeld* prevail we would reconsider the applicant's request to change his OPR for the period 9 July 1998 to 14 December 1998 to more fully represent his accomplishments. After careful and deliberate review of the HQ USAF/JAA advisory drafted 19 September 2006, we conclude that the plaintiffs in *Doe v. Rumsfeld* did not in fact prevail against the Secretary of Defense. Therefore, in the absence of evidence to the contrary, we find no compelling basis to recommend granting the relief sought in this application.

Pls.' A.R. 0005TLR–0006TLR. This statement merits at least two responses. First, it is not an accurate characterization of the Board's original decision, which denied Rempfer's OPR claim on the merits while reserving judgment on his constructive discharge claims. Second, it does not accurately describe the outcome of the *Doe* litigation. As Judge Sullivan explained in an opinion awarding attorneys' fees to the *Doe* plaintiffs, "there is no question that the plaintiffs have prevailed overall as they achieved the permanent injunctive relief that they sought." *Doe v. Rumsfeld*, 501 F.Supp.2d 186, 191 (D.D.C.2007). That the injunction dissolved on its own terms before the Court of Appeals could review the underlying controversy hardly diminishes the *Doe* plaintiffs' success: "The reason plaintiffs did not further succeed on appeal is because defendants mooted the appeal by giving plaintiffs the exact result they sought: revised action by the FDA." *Id.*

▇ Rempfer's constructive discharge and compensatory relief claims must accordingly be remanded to the AFBCMR. When an agency has "entirely failed to consider an important aspect of the problem [or has] offered an explanation for its decision that runs counter to the evidence before [it]," the agency's decision cannot be upheld under the APA's arbitrary and capricious standard of review. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In failing to address Rempfer's constructive discharge and compensatory relief claims, the Board's reconsideration decision falls short of the decision-making standards required by the APA. Moreover, even if the reconsideration decision could be construed as actually deciding these claims, it could not be upheld on the Board's reasoning. Contrary to the Board's conclusion, the plaintiffs in the *Doe* litigation clearly prevailed. To base denial of Rempfer's constructive discharge and compensatory relief claims on the fiction that the *Doe* plaintiffs lost would be arbitrary and capricious.

### 2. Dingle's Application for Record Correction

Russell Dingle requested i) that his Officer Performance Report be amended to include details of his work with Tiger Team Alpha; ii) that his discharge be documented as an illegal constructive termination; and iii) that he receive "back pay and allowances, plus lost rank/promotion and points caused by the illegal constructive discharge." A.R. 0005RED.

#### a. OPR amendment

In its initial decision, the Board denied Dingle's request to have his OPR amended for the exact same reasons that it denied Dingle's request. A.R. 0006RED. Because Dingle has likewise failed to show

either material error or injustice resulting from the Board's decision on this claim, that decision must be upheld.

### b. Constructive Discharge and Compensatory Relief

In Dingle's initial application to the AFBCMR, the Board deferred ruling on his constructive discharge and compensatory relief claims for the same reason as in Rempfer's case—the *Doe* litigation remained pending. A.R. 0006RED–0007RED. In its reconsideration decision, the Board likewise refused to address these claims head-on, stating as it had in Rempfer's case that Dingle's OPR would not be amended because "the plaintiffs in *Doe v. Rumsfeld* did not in fact prevail against the Secretary of Defense." Pls.' A.R. 0020RED. For the reasons already stated, this decision cannot be sustained in accordance with Section 706(2)(A) of the APA.

### Conclusion

Taken as a whole, Judge Sullivan's decisions in *Doe v. Rumsfeld* conclude that, prior to the FDA's December 2005 rulemaking, it was a violation of federal law for military personnel to be subjected to involuntary AVA inoculation because the vaccine was neither the subject of a presidential waiver nor licensed for use against inhalation anthrax. While the undisturbed factual and legal findings of the *Doe* litigation are clear, their impact on Rempfer and Dingle's claims before the AFBCMR is not. Other courts have affirmed the legality of pre–2005 orders subjecting military personnel to involuntary anthrax vaccination, although they did so without giving detailed consideration to the implications of the FDA's licensing requirements. *See Mazares v. Dep't of the Navy*, 302 F.3d 1382, 1385 (Fed.Cir.2002); *O'Neil v. Sec. of the Navy*, 76 F.Supp.2d 641, 645 (W.D.Pa.1999).

On remand, the Board must reach the issue and explain its conclusions about the merits of plaintiffs' constructive discharge claims and their accompanying demands for compensatory relief. This Court does not assume that the AFBCMR must necessarily pass on the legality of pre–2005 involuntary AVA vaccination in order to decide plaintiffs' constructive discharge claims. Should the Board address that underlying question on remand, this Court takes no position on whether the AFBCMR ought consider itself bound by *Doe*'s legal and factual conclusions. That said, the basis of the Board's conclusions may impact the kind of deference they are owed should plaintiffs again seek federal court review. For example, it is unlikely an interpretation by the AFBCMR of federal statutes governing the drug approval process would be entitled to significant deference. *See S. Co. Servs. v. FCC*, 313 F.3d 574, 579 (D.C.Cir.2002) ("*Chevron* [*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)] deference to an agency's interpretation of a statute is due only when 'it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.' ") (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)).

An appropriate order accompanies this memorandum.