**Larry E. BLASSINGAME, Plaintiff,**

v.

**SECRETARY OF the NAVY, Naval Discharge Review Board, and Board For the Correction of Naval Records, Defendants.**

**No. 84 CV 4104.**

United States District Court, E.D. New York.

Nov. 14, 1985.

---

**634**

Jules F. Simon, New York City, pro bono, for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D. of N.Y., Brooklyn, N.Y., for defendants; Patricia T. Galvin, Asst. U.S. Atty., Com-

mander Richard Philpott, JAGC, USN, Alexandria, Va., of counsel.

PLATT, District Judge.
### NATURE OF THE CASE

Plaintiff filed this suit to compel defendants to upgrade plaintiff's undesirable discharge from the Marine Corps to honorable status with credit for time served. In addition he demanded monetary damages in the amount of Thirty Million ($30,000,000) Dollars. The allegations in his *pro se* complaint were for erroneous enlistment, wrongful discharge and racial discrimination. A Court-ordered attorney subsequently amended the pleadings, requesting "equitable relief to address [sic] legal wrongs suffered by plaintiff as the result of actions taken by the defendants." (Amended Complt. at ¶ 3.) Jurisdiction was predicated on the Tucker Act, codified at 28 U.S.C. § 1346(a)(2), and the Administrative Procedures Act, codified at 5 U.S.C. § 701 *et seq.*

### A. *Procedural History*

After numerous adjournments, the case came before this Court on August 30, 1985, on defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted; alternatively, defendants requested a more definite statement with respect to plaintiff's claims. After hearing the arguments the Court reserved decision on the motion.

While the case was under advisement the Court received a letter from plaintiff's attorney dated September 5, 1985 which introduced a matter that was not raised at the oral argument, specifically, that plaintiff was wrongfully enlisted into the Marine Corps and did not learn of the fact until 1982 when he obtained competent *pro bono* legal assistance from the National Veterans Law Center in Washington, D.C. Such a claim, if substantiated, would not entitle plaintiff to the equitable relief requested in his complaint because a prerequisite for an honorable discharge is a valid

enlistment. *See* Judge Advocate Division Comment, Defs. Reply Mem.App. V at pp. 2–3. Nevertheless, it would at least warrant removal of the undesirable discharge from plaintiff's record. Because this claim was not embodied in the amended complaint (although it was asserted in the *pro se* complaint) this Court requested a reply brief from the government.

After receiving the government's response, which included a motion to strike the contents of the September 5 letter, the Court received a second letter from the plaintiff's attorney. Attached to it were several recent cases supporting the proposition that judicial review of a military board proceeding, pursuant to the Administrative Procedures Act ("APA"), is a distinct cause of action from review of the discharge itself and triggers its own statute of limitations period. The government again responded with a supplemental brief. Thus, to date plaintiff has alleged three distinct claims for relief. After briefly sketching the factual context of the case, the Court will address each of plaintiff's arguments in turn.

## B. *Background*

The plaintiff, Larry Blassingame, enlisted in the United States Marine Corps on July 9, 1969 at the age of 17 years, 19 days old. Plaintiff had only a tenth grade education and his test results placed him in Group IV, the lowest mental category the Navy allows to enlist.

Within a two-year period Mr. Blassingame's persistent pattern of misconduct provoked a number of nonjudicial punishments for disrespectful conduct, failure to obey orders, unauthorized absence, and sleeping on watch in a hostile fire area. (Defs. Reply Mem.App. I.) The culmination of these repeated incidents came in June 1971 when plaintiff received an undesirable discharge due to frequent involvement of a discreditable nature with the military authorities.[1]

In 1973 and again in 1977, plaintiff petitioned the Naval Discharge Review Board ("NDRB"), pursuant to 10 U.S.C. § 1553(a),[2] to upgrade his Undesirable Discharge to an Honorable Discharge.[3] On both occasions plaintiff was represented by counsel and in both instances the NDRB denied his request.

In 1979, six years after the NDRB first denied plaintiff relief, he petitioned the Board for the Correction of Naval Records ("BCNR") to upgrade his discharge. Normally, review by the BCNR occurs within three years after a claimant discovers an error or injustice, but in certain cases the Board may excuse the failure to timely file if it is in the interest of justice. 10 U.S.C. § 1552(b) (1982). The BCNR denied Mr. Blassingame's request in April 1981. In November of that year, plaintiff repetitioned the NDRB for a discharge upgrade. Relief was denied in February 1983 and again in December 1983 when the NDRB reconsidered the matter at plaintiff's request. The decision by the NDRB was approximately 30 pages in length and responded to each of plaintiff's 56 material contentions.

Finally, in February 1984 plaintiff repetitioned the BCNR. The BCNR referred the matter to the Judge Advocate General, who furnished an advisory legal opinion. That opinion, along with plaintiff's counsel's comments thereto, was resubmitted to the

---

**1.** At the time of plaintiff's separation additional charges were pending against him for assault. (Defs. Reply Mem.App. V at 4.)

**2.** Under 10 U.S.C. § 1553 a former member of the armed services can petition a discharge review board at any time within 15 years of the date of discharge or dismissal.

**3.** "Naval Regulations, published in Bureau of Naval Personnel Manual, Part C–10311, prescribe five types of discharges: (1) honorable, (2) general (under honorable conditions), (3) undesirable (the equivalent for officers is a discharge 'under other than honorable conditions'), (4) bad conduct (never issued to officers), and (5) dishonorable (a 'dismissal' for officers). Since the vast majority of discharges from the armed forces are honorable, anything less than an honorable discharge stigmatizes the recipient and is punitive in nature." *Van Bourg v. Nitze,* 388 F.2d 557, 559 n. 1 (D.C.Cir.1967) (footnote omitted).

BCNR and once again relief was denied in June 1984. Ultimately, on October 11, 1984, Mr. Blassingame filed suit in federal court for monetary and equitable relief to redress the wrongs allegedly committed against him during his tenure and discharge from the United States Marine Corps.

## DISCUSSION

Although plaintiff in the time since the filing of the amended complaint has continued to add claims and jurisdictional allegations with procedural abandon, in the interest of judicial efficiency this Court will address all of plaintiff's cumulative arguments.

### I. *Wrongful Discharge*

#### A. *Subject Matter Jurisdiction*

The amended complaint characterizes plaintiff's claim as one for equitable relief, predicating jurisdiction on the Tucker Act and the APA. The Memorandum of Law Opposing Defendants' Motion to Dismiss tacks on the federal question statute, 28 U.S.C. § 1331, the mandamus statute, 28 U.S.C. § 1361, and the declaratory judgment statute, 28 U.S.C. § 2201, as additional jurisdictional bases. Upon reviewing the legal arguments presented by both parties, this Court concludes that it lacks subject matter jurisdiction over this claim.

#### 1. *The Tucker Act*

The amended complaint states that "[t]his is an action for equitable relief to address [sic] legal wrongs suffered by plaintiff as the result of actions taken by the defendants." (Amended Complt. at ¶ 3). Jurisdiction will not lie under the Tucker Act because that statute does not authorize suits where the primary relief sought is equitable and monetary relief is merely an adjunct thereto.[4] *Larionoff v. United States*, 533 F.2d 1167, 1181 (D.C. Cir.1976), *aff'd*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977).

Alternatively, the Court could recharacterize this matter as a monetary claim because plaintiff, in addition to requesting the upgrading of his discharge status, also demands "credit for time served and such other and further relief as this Court shall deem just and proper." (Amended Complt. at ¶ 3). The Tucker Act, however, limits the jurisdiction of the district courts in monetary actions to claims of $10,000 or less. If awarded, the amount owing plaintiff as credit for time served would easily exceed that ceiling. Indeed, in his original filing, plaintiff, proceeding *pro se*, demanded money damages in the amount of Five Million Dollars and punitive damages totalling Twenty-five Million Dollars. Because the plaintiff has not waived the right to any damages in excess of the jurisdictional limit,[5] only the Court of Claims is empowered to hear his case. *Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983); *Insurance Company of North America v. United States*, 561 F.Supp. 106, 117 (E.D.Pa.1983).

#### 2. *The Administrative Procedures Act*

For the purposes of this claim, the APA will not confer subject matter jurisdiction on the Court because while the statute waives sovereign immunity for equitable claims, 5 U.S.C. § 702,[6] it does not alter the existing limitations on district court jurisdiction established by the Tucker Act. *Lee v. Blumenthal*, 588 F.2d 1281 (9th Cir. 1979). An independent basis for subject

---

4. There is a narrow exception to this limitation which permits a court to apply equitable concepts such as recission or reformation in aid of a monetary judgment, but it is inapplicable to the case at bar where plaintiff is demanding specific performance in the form of a discharge upgrade. *See Quinalt Allottee Assoc. v. United States*, 453 F.2d 1272, 1274 & n. 1, 197 Ct.Cl. 134 (1972).

5. Courts have recognized a plaintiff's right to remain in district court by waiving damages in excess of $10,000. *See, e.g., Goble v. Marsh*, 684 F.2d 12 (D.C.Cir.1982); *Wolak v. United States*, 366 F.Supp. 1106, 1110 (D.Conn.1973).

6. Under the terms of section 702 of the APA, claims for money damages are expressly barred by the doctrine of sovereign immunity.

matter jurisdiction must exist apart from 5 U.S.C. § 702. *See Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977) (APA "does not afford an implied grant of subject matter jurisdiction permitting federal judicial review of agency action."); *Smith v. Lehman,* 533 F.Supp. 1015 (E.D.N.Y.), *aff'd,* 689 F.2d 342 (2d Cir.1982).

### 3. *Other Statutes*

 Initially, the Court notes that properly to include the three additional jurisdictional allegations which appear in plaintiff's Memorandum of Law requires leave of the Court pursuant to Fed.R.Civ.P. 15(a). Nevertheless, the Court chooses to dispose of these grounds on the merits and not on a procedural technicality. Neither the federal question statute,[7] nor the mandamus power, nor the Declaratory Judgment Act contain the requisite waiver of sovereign immunity for a suit such as this to proceed. *See Smith v. Lehman,* 689 F.2d 342, 344 & nn. 5, 6 (2d Cir.1982) (declaratory judgment and mandamus statutes do not confer jurisdiction); *Doe v. Civiletti,* 635 F.2d 88, 94 (2d Cir.1980) ("Section 1331 is in no way a general waiver of sovereign immunity.... Nor is the Mandamus Statute an all-purpose waiver of the Government's immunity from suit."); *Lutz v. United States Postal Service,* 538 F.Supp. 1129 (E.D.N.Y.1982) (the Declaratory Judgment Act "'does not provide an independent basis for federal jurisdiction but simply increases the remedies available to a litigant'") (quoting *Estate of Watson v. Blumenthal,* 586 F.2d 925, 928 (2d Cir. 1978)).

**7.** An additional problem from the plaintiff's perspective is that 28 U.S.C. § 1331 would not accord him the relief he seeks because "absent an express waiver of sovereign immunity, 28 U.S.C. § 1331 does not provide jurisdiction over actions against the government and its officers that in effect seek disbursements from the public treasury or decrees affecting public administration." *Boyce v. United States,* 523 F.Supp. 1012, 1016 (E.D.N.Y.1981).

**8.** Title 28 U.S.C. § 2401(a) reads:

### B. *Statute of Limitations*

 Even if this Court did have subject matter jurisdiction over the wrongful discharge claim, the applicable statute of limitations, 28 U.S.C. § 2401(a), would be an insurmountable bar. The limitation period in § 2401(a) on actions against the United States is six years after the accrual of the right of action.[8] The remedies plaintiff requests are to redress alleged injuries resulting from his separation from the Marine Corps in 1971. It is well settled that "[a] cause of action is deemed to have accrued when facts exist which enable one party to maintain an action against another." *Great American Ins. Co. v. Louis Lesser Enterprises, Inc.,* 353 F.2d 997, 1001 (8th Cir.1965). In discharge review cases "the strong weight of authority is that the § 2401(a) limitations period begins to run when the service member's administrative discharge is final." *Walters v. Secretary of Defense,* 725 F.2d 107, 114 (D.C. Cir.1983), *reh'g denied,* 737 F.2d 1038 (D.C. Cir.1984). Nor does the filing of related administrative proceedings toll the period. *Geyen v. Marsh,* 587 F.Supp. 539 (W.D. La.), affirmed in part and reversed in part by the Court of Appeals, 775 F.2d 1303 (5th Cir.1985); *June v. Secretary of the Navy,* 557 F.Supp. 144, 149 (M.D.Pa.1982).

Thus, the time in which plaintiff could seek judicial relief expired in 1977. To decide otherwise "would permit a plaintiff to have the power to avoid the jurisdictional bar every time he submitted an application which was considered by the Board." *Pacyna v. Marsh,* 617 F.Supp. 101, 103 (W.D.N.Y.1984), *aff'd mem.,* 751 F.2d 374 (2d Cir.1984) (affirming on the record below).

§ 2401. Time for commencing action against United States
(a) except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

## II. *Erroneous Enlistment*

Six days after the oral argument in this case plaintiff's attorney submitted a letter to the Court which in essence presented a new cause of action for erroneous enlistment. Plaintiff stated that Navy regulations required enlistees in plaintiff's mental category to be at least 17 years, 8 months old, while plaintiff was only 17 years, 19 days old. "This was a non-waivable bar to his enlistment which rendered the exercise of military authority over him improper." (Pl.'s Letter at 2). According to the letter the claim was not time barred because Mr. Blassingame did not discover the injury until 1982 when he obtained competent *pro bono* assistance. "Mr. Blassingame's claim is within the settled construction of § 2401 that a claim does not accrue until 'the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.' " *Id.* (citation omitted).

Because plaintiff's contentions lack factual and legal merit, the Court dismisses plaintiff's tardy assertion of wrongful enlistment. The record indicates that plaintiff raised the issue of his age and low intelligence level before the NDRB in 1977. Plaintiff was present at a hearing at which his counsel

> stated that [plaintiff] joined the Marine Corps at age 17, went to Vietnam at age 18 and was discharged when he was 19. The representative requested that [plaintiff's] age during his service be considered as well as [that plaintiff] only had a 10th grade education. . . .
> Upon questioning of [plaintiff] by the members of the Board, [plaintiff] was asked if he had been counselled concerning his conduct prior to the Admin [sic] Discharge proceedings. [Plaintiff] denied he had been, but upon showing [plaintiff] an entry in his SRB on page 11A concerning his counselling and his signature acknowledging this fact, [plaintiff] then recalled this incident.

(Defs. Reply Mem.App. I at p. 2.)

Plaintiff's assertion that he did not discover the facts until 1982 is not only belied by the record, but it carries no legal weight. The "diligent discovery" exception is used in medical malpractice cases, such as the two cited in plaintiff's letter, or fraud cases where a diligent plaintiff could not have discovered the source and existence of his injury because the defendant affirmatively concealed the necessary facts. Plaintiff has not shown that he faced a similar situation involving affirmative concealment.

Substantively, as well as factually and procedurally, this cause of action warrants dismissal. The governing statute, 10 U.S.C. § 505, authorizes the armed services to accept qualified enlistees between the ages of 17 and 35. Persons under 18 must also have the written consent of a parent or guardian.

Mr. Blassingame had the requisite parental consent. The only possible irregularity was that persons with plaintiff's low test scores were by general regulatory guidelines required to be 17 years, 8 months of age at enlistment. Contrary to plaintiff's contention, however, that requirement was waivable when such persons enlisted for three years or when they enlisted under the "Buddy" program; plaintiff enlisted under both of these conditions. *See* App. IV to Defs. Reply Mem.

Furthermore, the law with regard to defective enlistments is clear: voluntary continuation on active duty (*i.e.*, beyond the regulatory age requirement) waives any such defect, whether that regulation constituted a waivable or nonwaivable enlistment defect. *See, e.g., United States v. Harrison,* 5 M.J. 476 (C.M.A.1978); *United States v. Catlow,* 47 C.M.R. 617 (C.M.A. 1973). *See also In re Grimley,* 137 U.S. 147, 153, 11 S.Ct. 54, 55, 34 L.Ed. 636 (1890) (when an enlistee takes the oath of allegiance his status changes from civilian to soldier and "[u]nless there be in the nature of things some inherent vice in the existence of the relation, or natural wrong in the manner in which it is established, public policy requires that it should not be disturbed.").

In contrast, *United States v. Brown*, 48 C.M.R. 778 (C.M.A.1974), the case cited by plaintiff as authority for the proposition that erroneous enlistment renders imposition of military authority improper, involved a 16 year old recruit who was assisted in enlisting by a recruiter who falsified the required parental consent. Then, before turning 17, the soldier advised his company commander of the deception and requested a discharge. In the case at bar the plaintiff continued in the Marine Corps voluntarily after attaining the age of 17 years, 8 months old. Thus, the cause of action for erroneous enlistment warrants dismissal.

### III. *Arbitrary and Capricious Agency Decisions*

 Although plaintiff in the amended complaint does not distinguish between the claim for wrongful discharge and a claim of entitlement to judicial review of an arbitrary and capricious administrative decision pursuant to 5 U.S.C. § 706(2), the Court has chosen to address them separately because ostensibly they are different causes of action.[9] The first necessitates a *de novo* review of the facts of the discharge, the second requires an examination of two agency decisions to determine whether they were arbitrary, capricious, in bad faith, contrary to law, or unsubstantiated by the evidence.[10] Moreover, the issue of agency review raises anew the application of the § 2401 statute of limitations period.

### A. *The Statute of Limitations*

The *Walters* case did not decide whether review of agency discharge decisions must fall within six years of the date of discharge, but two Judges concurring in the denial of the motion for rehearing *en banc* took pains to note:

> We want to emphasize the limited reach of the holding in this case. As we read *Walters*, the panel opinion, 725 F.2d 107 (D.C.Cir.1983), merely holds that, in *independent civil actions* brought to correct a serviceman's record, the six-year statute of limitations found in 28 U.S.C. § 2401(a) applies. *Walters* explicitly does not speak to the altogether distinct question of what time period governs when *review* is sought of administrative discharge decisions. *See* [725 F.2d] at 115. ("Nor do we address the *reviewability* of such an administrative decision in federal court.") (emphasis added). Congress has granted discharged service members 15 years from discharge to petition a review board for an upgrade, 10 U.S.C. § 1553(a), and this court has expressly held that Congress did not intend to preclude judicial review of decisions reached by those review boards. *Van Bourg v. Nitze*, 388 F.2d 557, 564 n. 14 (D.C.Cir.1967). As a result, we do not believe *Walters* in any way limits jurisdiction to *review* a correction board's treatment of a petition for a discharge upgrade that is timely filed, under 10 U.S.C. § 1553(a), with the relevant administrative body.

*Walters v. Secretary of Defense*, 737 F.2d 1038 (D.C.Cir.1984) (JJ. Wald and Mikva concurring) (emphasis in original).

Since the *Walters* decision issued, the reviewability of a military board decision has come before several district courts producing a split in authority. *See, e.g., Bitt-*

---

**9.** The Court here notes an additional technical defect in plaintiff's pleadings. The amended complaint names as parties the BCNR and the NDRB. However, they are unincorporated federal agencies which Congress has not authorized to be sued either explicitly by statute, or implicitly as the result of being the offspring of a suable entity. *Helash v. Ballard*, 638 F.2d 74, 76 (9th Cir.1980). A suit which involves the agency actions should be brought against the individual officers involved. *Blackmar v. Guerre*, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952).

**10.** Defendants argue that a distinction between judicial review of an administrative decision denying an upgrade and review of the underlying decision to award the discharge is specious. In this case it is especially true because plaintiff has "never claimed a right to upgrade under some new regulatory procedure or under some new standard created for persons in his particular situation." (Defs. Supp.Mem. at 17). *Cf. Bittner v. Secretary of Defense*, 625 F.Supp. 1022, 1029 (D.D.C.1985).

*ner v. Sec'y of Defense*, 625 F.Supp. 1022, (D.D.C.1985) (plaintiffs' challenge of administrative decisions denying discharge upgrade reviewable despite fact that actual discharges occurred more than six years before action filed); *see also White v. Sec'y of the Army*, 629 F.Supp. 64, 12 Mil.L.Rep. 2449, 2451 (D.D.C.1984); *Weber v. Weinberger*, No. K 83–644, transcript at 12 (W.D. Mich. November 13, 1984) (transcript of court's oral hearing).

The *Bittner* court relied heavily on the D.C. Circuit's opinion in *Van Bourg v. Nitze*, 388 F.2d 557 (D.C.Cir.1967), where the court emphasized that,

> [t]he function of the [Discharge] Review Board and the Correction Board is to review the type and nature of discharges in order to correct errors or remove injustices. And it is the duty of the judiciary to inquire into an allegedly wrongful and detrimental refusal to grant deserved relief.

*Id.* at 563 (footnote omitted). (In *Van Bourg* plaintiff's discharge occurred in 1951; plaintiff exhausted his administrative remedies in 1963 and then sought judicial review in 1965. Neither the statute of limitations nor laches were deemed a bar to review.)

In the *Bittner* opinion Judge Green stressed, however, that the court could not review the actual discharges but only the review boards' decisions denying a request for an upgrade: "In examining the review boards' decisions a court determines whether these review boards properly applied current law and current policies and procedures. This examination can only be described as distinct from reviewing the original discharge qualification itself." *Bittner*, at 1029.

In considering the same issue several other district courts have reached the opposite conclusion. In *Long v. United States*, 616 F.Supp. 1280 (E.D.N.Y.1985), *appeal pending*, No. 85–6270 (2d Cir.1985), the plaintiff was discharged from the Army in 1960 and sought relief from the Army Discharge Review Board ("ADRB") in 1960, '69 and '79, and from the Army Board

for Correction of Military Records ("ABCMR") in 1981 before filing suit for wrongful discharge. Judge Glasser of this Court denied plaintiff leave to amend the original complaint to allege that the decisions of the ADRB and ABCMR were arbitrary and capricious, reasoning that "even if leave to amend ... were granted, plaintiff's claim would still be barred by the statute of limitations.", at 1284 (footnote omitted). *See also Geyen v. Marsh*, 587 F.Supp. 539 (W.D.La.1984), affirmed in part and reversed in part by the Court of Appeals, 775 F.2d 1303 (5th Cir.1985) (where plaintiff brought claims of an invalid discharge in 1972 and arbitrary and capricious denial of relief in 1982 by ABCMR, district court dismissed on all claims stating that "Congress allowed applicants to petition the ADRB within 15 years, but absolutely has not waived sovereign immunity for the same period.") *Id.* at 541.

Policy considerations, as well as legal precedents, can be marshalled in support of both sides. On the one hand there is the idea that access to the courts should be freely available for review of administrative agencies' decisions. *See, e.g., Seepe v. Dep't of the Navy*, 518 F.2d 760, 763 (6th Cir.1975) ("It is clear, however, that Congress did not intend to deprive the District Courts of subsequent review of Board for Correction of Naval Records decisions."). Conversely the courts have

> ... emphasized that a statute which limits the time for commencing a suit against the United States is not merely an instrument of repose. It is also one of the conditions imposed upon those plaintiffs who would benefit from a waiver of sovereign immunity. *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979). At the same time, it is a limitation upon the jurisdiction of the courts. Since it is Congress, not the judiciary, which has the power to waive sovereign immunity, the courts must be careful not to extend such a waiver beyond the scope intended by Congress. *Id., see United States v.*

*Sherwood,* 312 U.S. 584, 587–88, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941).

*June v. Secretary of the Navy,* 557 F.Supp. 144, 149 (M.D.Pa.1982).

 After searching consideration, this Court finds itself in accord with the decisions in *Long* and *Geyen.* After exhausting the available administrative remedies, review of the bases of the agency decisions may be had in district court provided it is timely, *i.e.,* within the § 2401 period which accrues on the date of discharge.[11] In reaching this decision the Court relied on a leading case in the Court of Claims, *Friedman v. United States,* 310 F.2d 381, 159 Ct.Cl. 1 (1962), *cert. denied sub nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). The *Friedman* court asserted that:

> [I]t does not follow from the general existence of judicial review for Correction Board decisions that those decisions create a *new* substantive cause of action which has its own, *new,* limitations period. That a tribunal's rulings are subject to judicial review means that the administrative decision is open to scrutiny by a court, if a timely judicial proceeding is filed—not that the administrative tribunal's decision, in itself, becomes the new measure and the new beginning of the plaintiff's judicial rights.

· · · · ·

... All that the existence of judicial review means is that the Board's decision will be reviewed, in a proper case if a timely suit is brought.

310 F.2d at 397 (emphasis in original). The opinion emphasized that the legislative history of 10 U.S.C. § 1552 stated that "the courts would not be precluded from reviewing Correction Board cases 'under appropriate circumstances,'" which it construed to mean, *inter alia,* when the statutory limitations period had not run on the underlying substantive cause of action.[12]

B. *The Agency Decision Was Reasonable and Should Be Affirmed*

 As a final matter, the Court has reviewed the merits of the 1983 and 1984 NDRB and BCNR decisions (apparently plaintiff does not contest the validity of the three prior dispositions). Unless they are arbitrary, capricious, unsupported by the evidence or contrary to law, the Court is bound to uphold the administrative verdicts. *See, e.g., Nethery v. Orr,* 566 F.Supp. 804, 807–08 (D.D.C.1983); *deCicco v. United States,* 677 F.2d 66, 70 (Ct.Cl. 1982). After considering the facts and the record it appears that the discharge status assigned to the plaintiff was fully warranted by his conduct as a member of the United States Marine Corps. "The NDRB's most recent decision consists of 18 pages in the original decision, with two Amendments of 9 and 2 pages respectively.

---

**11.** The Court acknowledges that there may be situations where a change in the law or applicable standards may warrant a review after six years have elapsed from the date of discharge, *see, e.g., White v. Secretary of the Army,* 12 Mil.L.Rep. 2449 (D.D.C. April 10, 1984). Such is not the situation in the case at bar.

**12.** In addition to finding that this case is barred by the statute of limitations, the Court concludes that the equitable doctrine of laches is also applicable in this case. Laches requires "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). *See also Majorica, S.A. v. R.H. Macy & Co., Inc.,* 762 F.2d 7 (2d Cir.1985). Where the delay is prolonged, there is less need to search for specific prejudice and a greater burden on the plaintiff to demonstrate lack of

prejudice. *Cason v. United States,* 471 F.2d 1225, 1229, 200 Ct.Cl. 424 (1973).

Generally, any delay in excess of the statute of limitations period raises a presumption that the delay is inexcusable. *Mosley v. Secretary of the Navy,* 522 F.Supp. 1165, 1166–67 (E.D.Pa.1981). In this case although plaintiff has been litigious-minded, he nevertheless delayed filing suit for 14 years after the date of his discharge. Plaintiff provides no explanation or justification for this delay, such as a change in the applicable standards, and so the presumption operates against him. Moreover, the government would certainly be prejudiced if this case were to proceed to trial. Witnesses would be difficult to locate and even if they were traced memories of events and facts fade after 14 years. *See Long v. United States,* at n. 5. Thus, this Court would consider plaintiff's claim barred by the $aches doctrine as well as the limitations statute.

**642**

In those Opinions, NDRB answered line by line, point by point all 56 'material contentions of fact, law or discretion' asserted by plaintiff. The BCNR decision, although less lengthy, addressed every one of the contentions expressed in the brief of plaintiff's counsel to that Board." (Defs. Reply Mem. at 14).

Thus, this Court finds that the decisions rendered by the military authorities in this case withstand the Court's scrutiny under the APA. The decisions were neither arbitrary, capricious, contrary to law or unsupported by evidence. The denials of relief were rendered only after a complete presentation of the facts and a correct application of law to facts. Consequently, even if the final claim were not barred by the statute of limitations or the doctrine of laches, this Court concludes that the administrative decisions should be affirmed.

### CONCLUSION

For all of the reasons stated herein, the Court hereby grants defendants' motion for summary judgment.

SO ORDERED; submit judgment on notice.