Larry E. BLASSINGAME,
Plaintiff–Appellant,

v.

SECRETARY OF THE NAVY, Naval Discharge Review Board, and Board for the Correction of Naval Records, Defendants–Appellees.

No. 523, Docket 88–6135.

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1988.

Decided Jan. 24, 1989.

Richard W. Brewster, New York City (Helen Gavaris, Moses & Singer, New York City, of counsel), for plaintiff-appellant.

David M. Nocenti, Asst. U.S. Atty. for the Eastern District of New York, Brooklyn, New York (Andrew J. Maloney, U.S. Atty. for the Eastern District of New York, Robert L. Begleiter, Asst. U.S. Atty. for the Eastern District of New York, Brooklyn, New York, Cmdr. Richard Walsh, USN and Capt. Robert Barber, USMC, Office of the Judge Advocate General, Dept. of the Navy, Alexandria, Virginia, of counsel), for defendants-appellees.

Before KAUFMAN, OAKES, and CARDAMONE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

We are called upon to weigh the armed forces' prerogative to discharge as "undesirable" those it deems unsuitable for service. Larry Blassingame appeals from a decision of the United States District Court for the Eastern District of New York granting summary judgment to appellees and dismissing his suit to compel the upgrading of his "undesirable" discharge from the U.S. Marine Corps to "honorable" status. Appellant had repeatedly petitioned appellees the Naval Discharge Review Board ("NDRB") and the Board for the Correction of Naval Records ("BCNR") for this relief. Because appellees did not properly consider the Marine Corps's failure to conduct the investigation of Blassingame's erroneous enlistment required by its regulations, their decisions to deny relief cannot stand.

I.

The facts are important. With the consent of his parents, Blassingame enlisted in the United States Marine Corps for a three-year term on July 9, 1969. At the time, he was 17 years and 19 days of age and had only a tenth grade education. His scores on Armed Forces Qualification Tests placed him near the bottom of Mental Category IVB, the lowest of the four mental categories from which the Navy accepts enlistees. Because of his low test scores, Blassingame was enlisted, as a so-called "New Standards" or "Project 100,000" recruit, under a Vietnam War era program intended to increase troop strength by lowering standards within certain prescribed limits.

Naval regulations required that recruits from this group be at least 17 years, 8 months of age and sign on for a two-year term of service. Recruiting officers were not authorized to waive these restrictions. These regulations were stricter than the statutory requirements, which set the minimum age for enlistment at 17 years and required the written consent of a parent or guardian if the candidate was younger than 18 years. See 10 U.S.C. § 505(a) (1982). Thus, while Blassingame's enlistment met the necessary statutory qualifications, it was technically defective under the internal rules of the Navy. He was more than seven months underage and his tour of duty was three years instead of two.

Paragraph 6012 of the Marine Corps Separation and Retirement Manual ("Separation Manual") provides: "Any case [of erroneous enlistment] coming to a commander's attention which purports to be of this nature shall be investigated, and a complete

report shall be made promptly to the Commandant of the Marine Corps." The section also provides that a Marine may be discharged "for the convenience of the Government" under enumerated circumstances, which include "erroneous enlistment or extension of enlistment." These discharges are not to be "less favorable than under honorable conditions."

While in the Marines, Blassingame amassed a sizeable record of disciplinary infractions.[1] On several occasions, he received a Commanding Officer's Non–Judicial Punishment ("NJP") for insubordination and unauthorized absences from duty. In addition, his rank was reduced and he was fined after being found guilty of disobeying an order at a Summary Court–Martial proceeding.

Several subsequent infractions caused an administrative discharge board to conduct a hearing on appellant's record. The board then recommended that he receive an "undesirable" discharge by reason of unfitness due to "frequent involvement of a discreditable nature with military authorities." His entire military record was then reviewed by the Staff Judge Advocate who found the proceedings sufficient in law and fact. Blassingame was officially separated from the Marine Corps on June 18, 1971, with an "undesirable" discharge.

Throughout the extensive reviews of his case, Blassingame was not told that his enlistment was defective under Navy rules. Nor was he advised of his right to petition for a "convenience of the government" discharge based on his wrongful induction.

Moreover, contrary to the provisions of the Separation Manual, no investigation of his flawed recruitment was ever made.

## II.

Appellant commenced a 15 year odyssey of appeals which entailed six separate administrative evaluations of his case and federal judicial review producing three separate opinions. Blassingame requested the NDRB to upgrade his discharge in 1973 and 1977.[2] The NDRB denied both requests for relief because it found "no indication of injustice, inequity, or error in the administration of the discharge." Appellant then petitioned the BCNR[3], which concluded "that the facts and circumstances of [Blassingame's] case fail to show that a material error occurred or an injustice has been suffered."

In a third appeal to the NDRB in 1981, Blassingame asserted for the first time that he was improperly enlisted. The NDRB again denied relief. Later, at appellant's request, it reconsidered the matter and issued two lengthy, detailed amendments to its decision, but reaffirmed its conclusion.

Although the NDRB recognized that the Separation Manual authorized "honorable discharges" for soldiers discovered to have been wrongfully inducted, it overlooked the applicability of the second part of paragraph 6012(1)(e) which required investigation of alleged instances of erroneous enlistment. The NDRB did not consider why

---

1. At the time of Blassingame's dismissal, Marine Corps regulations authorized five categories of discharge: honorable, general, undesirable, bad conduct, and dishonorable. 32 C.F.R. § 730.51 (1970); *see also* 32 C.F.R. § 41, app. A, ¶ 2(C)(2); 32 C.F.R. §§ 724.109, 724.111 (1986). Honorable discharges were given upon proper military behavior and satisfactory performance of duty; general discharges upon service under honorable conditions, but those not sufficiently meritorious to warrant an honorable discharge. Undesirable discharges were utilized under conditions other than honorable, and bad conduct and dishonorable discharges were given to those convicted by court-martial. *See* 32 C.F.R. §§ 730.52–730.56 (1970).

2. The NDRB is comprised of five military officers empowered to review and, if necessary,

reclassify discharges awarded other than by general court-martial. Its actions are subject to the review of the Secretary of the Navy. 10 U.S.C. §§ 1553(a)–1553(b) (1988); 32 C.F.R. § 724.201–724.206 (1988).

3. The BCNR is made up of civilian personnel from the Department of the Navy. Unlike the NDRB, it can actually change a service member's records where "necessary to correct an error or remove an injustice." *See* 10 U.S.C. § 1552(a); 32 C.F.R. § 723.2 (1988). It typically hears cases where the NDRB has already denied full relief. *See generally* Lunding, *Judicial Review of Military Administrative Discharges,* 83 Yale L.J. 33, 41–42 (1973).

the Marine Corps failed to inquire into Blassingame's induction or how this omission affected his ability to petition for a "convenience of the government" honorable discharge.

Appellant then filed a second application to the BCNR. This time the Board referred the petition to the Commandant of the Marine Corps for an advisory legal opinion. Although the Marine Corps's Judge Advocate conceded that Blassingame's recruitment had been flawed, he recommended that no relief be granted. Without considering the applicability of the Separation Manual provisions mandating an investigation and authorizing an honorable discharge, the BCNR again denied relief.

On October 11, 1984, Blassingame filed suit in the United States District Court for the Eastern District of New York, challenging the NDRB and BCNR decisions and seeking, in addition to an upgrading, $30 million compensatory and punitive damages. Judge Platt converted a motion to dismiss by appellees into a summary judgment motion which he granted, holding that the claims were time-barred and that the decisions of the NDRB and BCNR were not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Blassingame v. Secretary of the Navy,* 626 F.Supp. 632, 636–42 (E.D.N.Y.1985) (*"Blassingame I"*). He noted in dictum, however, that appellant's claim of wrongful enlistment, if substantiated, "would at least warrant removal of the undesirable discharge" from his record. *Id.* at 634.

Without reaching the merits, this Court reversed and remanded, holding that the claims were not barred by the statute of limitations and that the district court's conversion of defendant's motion "surprised" the plaintiff. *Blassingame v. Secretary of the Navy,* 811 F.2d 65, 68–73 (2d Cir.1987) (*"Blassingame II"*). On remand, appellees moved for summary judgment. Reaffirming his prior determination that the NDRB and BCNR decisions were neither arbitrary nor capricious, Judge Platt granted the motion. *Blassingame v. Secretary of the*

*Navy,* 678 F.Supp. 416, 418 (E.D.N.Y.1988) (*"Blassingame III"*). He also rejected the arguments that Blassingame's erroneous enlistment qualified him for an honorable discharge, that the NDRB and BCNR erred by failing to take into consideration the clemency granted to draft evaders and deserters by Presidents Ford and Carter, and that the divergent treatment between pardoned deserters and draft evaders and Blassingame violated principles of equal protection.[4]

### III.

■ Agency decisions are subject to judicial review and can be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act, 5 U.S.C. § 706 (1982); *see Chappell v. Wallace,* 462 U.S. 296, 302, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983). While the scope of our review of agency decisions is ultimately narrow, it is to be plenary, careful and searching. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

■ Blassingame did not learn his enlistment was underage according to Navy rules until 1981—a decade after his discharge. But, the deficiency, not to mention his grade IVB mental categorization, was known to the Marines as early as August 1969. Moreover, Blassingame committed the first three of his eight disciplinary infractions before he reached 17 years, 8 months of age. His enlistment papers were therefore reviewed at least three times before he reached the proper age of induction. We cannot comprehend how, in the course of such exhaustive review, Blassingame's erroneous enlistment never came to the attention of a Marine Corps commander within the meaning of § 6012 of the Separation Manual. Indeed, the Marines' failure to investigate under these circumstances might, in itself, constitute the type of prejudicial procedural disfunction that warrants overturning agency decisions. *See Service v. Dulles,* 354 U.S. 363,

---

**4.** Blassingame has not pursued the equal protection claim on appeal.

388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957); *cf. Neal v. Secretary of the Navy,* 639 F.2d 1029, 1035–36 (3d Cir.1981) (failure of head of Enlisted Assignment Branch to serve as senior member of the Board and other technical procedural irregularities in an administrative hearing insufficiently prejudicial to justify overturning the Board's decision).

It is axiomatic that an agency of the government must scrupulously observe its own rules, regulations, and procedures. *United States ex rel Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954), *Service v. Dulles, supra.* With respect to the armed forces, this requirement "does not involve any undue interference with the proper and efficient operation of our military forces because we require only that the [Navy] carry out the procedures and regulations it created itself." *Smith v. Resor,* 406 F.2d 141, 146 (2d Cir.1969).

The Marine Corps was required to investigate Blassingame's enlistment by the terms of its own Separation Manual. We decline to adopt the overly limited interpretation of paragraph 6012 urged by the Government, that investigations of erroneous enlistment are required merely if the government seeks to discharge a recruit for deficient recruitment. To the contrary, the section imposes a duty to investigate any alleged instances of erroneous enlistment. The plain wording of the passage establishes that an investigation is required of any case which "comes to a commander's attention." No requirement that the soldier still be in uniform is suggested.

■ If the inquiry substantiates a charge of erroneous enlistment, then the government may discharge the individual. Dismissal is not mandatory, but may occur "for the convenience of the Government." Should the Marine Corps, however, elect to discharge a recruit for erroneous enlistment, it must do this under "honorable" conditions. If the soldier has already re-

ceived a less than honorable discharge, equity suggests that the Corps may choose to upgrade the discharge to redress any consequent harm.

The NDRB and BCNR ignored the Marines' failure to conduct the required investigation. Accordingly, they neglected to weigh the potential prejudicial effect of this non-compliance on any subsequent petition for discharge by appellant. But for the Corps's initial improper induction and subsequent failure to investigate, Blassingame's record might have been spared the blemish of an "undesirable" discharge.

■ The NDRB held that, even assuming illegal induction, appellant could not show that he would have been granted an honorable or a general discharge. But Blassingame should not be required to bear this burden, any more than he should be charged with the responsibility of ensuring that the Marine Corps follows its own regulations. Moreover, an investigation conducted in 1970 might well have resulted in appellant's honorable or general discharge.[5]

### IV.

In light of appellees' failure to consider the Marine Corps's non-compliance with the terms of its Separation Manual, we believe appellees' decisions violated the Administrative Procedure Act. We reverse and remand to the Secretary of the Navy for further proceedings consistent with this opinion.

---

5. We do not reach appellant's claims that the amnesty and clemency programs of Presidents Ford and Carter require that he receive an honorable discharge. We note *en passant* that these issues were never before the BCNR and NDRB.

They are not part of the administrative record and, accordingly, do not form a basis for our review. *Florida Power & Light v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); *Blassingame II,* 811 F.2d at 72.