Henry PLATSKY, Plaintiff,

v.

William STUDEMAN, Director, and Gerald Young, Deputy Director, National Security Agency, Fort Meade, Maryland; Robert Gates, Director, Central Intelligence Agency, McLean, Virginia; William Sessions, Director, and John Hicks, Assistant Director in charge of Intelligence, Federal Bureau of Investigation, United States Department of Justice, Washington, D.C.; and Lt. General James Clapper, Jr., Director, Defense Intelligence Agency, United States Department of Defense, Washington, D.C., Defendants.

Nos. CV–90–1915, CV–90–1916 and CV–90–2314.

United States District Court, E.D. New York.

Aug. 16, 1993.

Henry Platsky, pro se.

Michelle T. Weiner, Asst. U.S. Atty., Brooklyn, NY, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

### FACTS

Plaintiff *pro se* Henry Platsky originally filed the complaints in the above-captioned consolidated action against various federal agencies which, he alleged, engaged in conduct that interfered with his freedom of association in violation of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d

619 (1971). Platsky sought both damages and equitable relief, the latter pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* By Memorandum and Order dated February 26, 1991, 1991 WL 35500 this court granted the defendant agencies' motions to dismiss on the grounds of lack of standing, failure to state a claim, and lack of subject matter jurisdiction.

On appeal, the Second Circuit found that this court erred in failing to allow plaintiff to replead his claims. More precisely, the court of appeals agreed that Platsky incorrectly named as defendants government agencies immune from civil liability under *Bivens,* but admonished this court for failing "to explain the correct form to the *pro se* plaintiff so that Platsky could have amended his pleadings" to name individuals rather than agencies as the defendants. 953 F.2d 26, 28 (2d Cir. 1991). With respect to this court's finding that plaintiff had failed to set forth sufficiently particular facts, the Second Circuit stated as follows:

> The complaints contain somewhat generalized allegations that the defendants deprived Platsky of his right to associate with political organizations of his choice, and caused him to suffer "harassment in application for government services, on jobs, and in everyday life." However inartfully pleaded, these allegations suggest that the plaintiff had specific instances of injury in mind. When we questioned Platsky at oral argument, he recounted definite acts by which the defendants allegedly caused him harm. According to Platsky, on one occasion the defendants' agents approached his landlord and attempted to have him evicted from his home. Plaintiff also stated that the defendants specifically interfered with his admission to a particular political organization. If they were pleaded correctly, these allegations might state a legally cognizable claim.

*Id.* at 28–29. After instructing plaintiff that "his complaint must set out, with particularity and specificity, the actual harms he suffered as a result of the defendants' clearly defined acts," the appeals court remanded the case to this court "with instructions to allow the plaintiff to replead." *Id.*

Plaintiff filed an amended complaint on July 20, 1992 which names as defendants directors and subdirectors of the various agencies rather than the agencies themselves and sets forth in detail the conduct about which he complains. The following paragraph from that complaint, numbered 11(f), is exemplary of plaintiff's specific charges:

> In 1978 plaintiff became involved with the cultural-artistic movement which became known to the world as "punk-rock" and was damaged by the disruptive activities of the agencies headed by the defendants in so doing. Shortly after becoming involved with this loose, counter-cultural movement, plaintiff placed ads in a local Chicago paper soliciting musicians to aid in forming a musical band. Plaintiff specifically described the band he intended to form as "political" and drew comparisons specifically to a band named The Clash, a band associated with Left politics rapidly becoming popular in Great Britain. Plaintiff was approached by a man named Ted Osuch who expressed interest in helping to form such a band. Mr. Osuch introduced plaintiff to a woman named Jill Pryzbocki who began to work with plaintiff in forming such a band. Later, after having brought Ms. Pryzbocki together with plaintiff, Mr. Osuch revealed to plaintiff that he was an informant for the Federal Bureau of Investigation. Ms. Pryzbocki introduced plaintiff to another friend, whose name plaintiff cannot remember, who later informed plaintiff of his association with the Central Intelligence Agency. Plaintiff charges that Ms. Pryzbocki worked alongside him in forming a band under the direction of operatives of these two agencies. A woman known to plaintiff as Missy also worked in cooperation with these agencies. Plaintiff further charges that the punk-rock movement in general suffered from the sort of disruptive activities proven to have been instigated by the agencies headed by the defendants within similar movements in the 1960's. In 1984, in NYC, plaintiff attended a meeting of "hard-core" punk-rockers who gathered to organize within the movement against

United States policies in El Salvador, a young African-american woman told the entire gathering that she had been coerced into joining naval intelligence and was sent to this gathering, reluctantly, on their behalf in order to infiltrate the movement. Plaintiff believes that literally dozens of such agents of the defense intelligence agencies were secreted into the punk-rock scene, under the direction of the heads of Defense Intelligence, in order to disrupt and manipulate this movement. Plaintiff demands relief for these damages suffered.

(Complaint ¶ 11(f)). In accordance with the Second Circuit's directive, plaintiff employs identical specificity in alleging other harms caused by defendants. What is clear from these specific allegations—and what became even clearer at oral argument on the government's motion to dismiss—is that plaintiff's original claims against agencies of the United States did not contain a mere error in pleading; rather, his claims were and are in fact leveled against federal agencies and officers in their official capacities. The following excerpt from the transcript of oral argument is instructive:

THE COURT: Mr. Platsky, may I interrupt for a minute. I read your papers. They're very interesting, and you tell me you're relying upon them.

But so I can be clear in my own mind as to what your claim is, would you be good enough to tell me exactly what William Sessions, the director of the F.B.I., did to you?

MR. PLATSKY: What he did to me is that he directed—he is responsible for the activities of the F.B.I., and this organization has maintained illegal surveillance, illegal files, illegal activities, and the activities are activities of informants and agents who come into organizations and don't simply engage in surveillance and counter intelligence, but actually manipulate these organizations. They move to actually control these organizations and—

THE COURT: You didn't point to anything that I recall seeing, and I just want to make sure I didn't miss something, Mr. Platsky, where you accuse Mr. Sessions as an individual of having done anything to you.

MR. PLATSKY: My understanding is he's the responsible Director of the Federal Bureau of Investigation, and any transgressions that directly harm me has to be held accountable in the Courts.

THE COURT: If I asked you the same question regarding John Hicks, who you described as the Assistant Director in charge of Intelligence for the F.B.I., your answer would be the same?

MR. PLATSKY: The same.

THE COURT: And Robert Gates, the Director of the Central Intelligence Agency, did he do anything to you?

MR. PLATSKY: Yes, essentially the same thing.

THE COURT: You don't know Mr. Gates, do you? Have you ever met him?

MR. PLATSKY: I never met the good man.

THE COURT: And Mr. Gates has never done anything directly to you for which you would hold him personally responsible?

MR. PLATSKY: It's the agency for which he's responsible that has done the harm.

THE COURT: And the same would be true of Lieutenant General Klapper [sic] who is the Director of the Defense Intelligence Agency? You don't know General Klapper, [sic] do you?

MR. PLATSKY: I have no idea what he looks like.

THE COURT: He's never been at any of your organization meetings?

MR. PLATSKY: I couldn't be sure of that, your Honor. I don't know what he looks like.

THE COURT: You wouldn't know him if you had seen him?

MR. PLATSKY: I wouldn't know him if I [had] seen him.

THE COURT: It may be he was there surreptitiously.

MR. PLATSKY: I wouldn't be surprised.

THE COURT: But Lieutenant General Klapper [sic] has not individually done anything to harm you, has he?

570

MR. PLATSKY: No.

THE COURT: Again, your answer is the same?

MR. PLATSKY: You understand my answer, I think.

(Transcript of Argument, dated July 16, 1993, at 5–7).

## DISCUSSION

This court recognizes that "[i]n order to justify the dismissal of a *pro se* complaint, it must be ' "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' " *Platsky,* 953 F.2d at 28 (*quoting Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). It is equally true, however, that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* — U.S. —, —, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). Bearing these principles in mind, it is clear that plaintiff's consolidated complaint must be dismissed in its entirety.

■ As an initial matter, most of the claims in this action are barred by the three-year statute of limitations applicable to *Bivens* actions. *See Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989) (New York's three-year statute of limitations governing personal injury actions applies to civil rights actions); *Chin v. Bowen,* 833 F.2d 21, 23 (2d Cir.1987) (statute of limitations that applies Section 1983 claims applies to *Bivens* claims). Platsky alleges that he was damaged as an anti-war activist from 1965 through 1971 (Complaint ¶¶ 8(a) & 13); as an activist in the New York Revolutionary Committee from 1971 through 1972 (Complaint ¶ 8(b)); as an activist in the Vanguard Newsletter Committee and Class Struggle League from 1971 through 1975 (Complaint ¶ 8(c)); as a Trotskyist Organization supporter between 1975 and 1976 and 1976 and 1985 (Complaint ¶ 8(d) & (e)); and as a punk rocker in 1978. (Complaint ¶ 8(f)). As plaintiff filed the earliest of his consolidat-

ed actions in 1990, all claims that accrued prior to 1987 are untimely. While plaintiff derogates this argument as merely "procedural," it is important to recognize " 'that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of justice.' " *McNeil,* — U.S. at —, 113 S.Ct. at 1984 (*quoting Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)).

■ Even assuming that plaintiff's specific allegations somehow constitute a violation "of a continuing nature," (Brief at 2), his complaint still must be dismissed. As the Second Circuit recognized when it remanded this action for repleading, in order to state a claim for damages under *Bivens* a plaintiff must allege wrongdoing by those public officials responsible for violating his constitutional rights. *See Platsky,* 953 F.2d at 28 (*citing Mack v. United States,* 814 F.2d 120, 122–23 (2d Cir.1987) and *Leonhard v. U.S.,* 633 F.2d 599, 618 n. 27 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981)). As the above excerpts—which are merely exemplary—make clear, plaintiff names the defendants in his consolidated complaint not as individuals but rather as representatives of the agencies over which they have jurisdiction; in other words, he does not bring this action against the specific federal officers—alleged F.B.I. informant Ted Osuch, for example—who infiltrated his organizations. Rather, it is the agencies for which these officers are responsible that allegedly have done the harm. (Tr. at 5–7). Therefore, plaintiff's claims for damages are, indeed, claims against the United States and accordingly must be dismissed on the basis of sovereign immunity. *See, e.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).

■ Furthermore, plaintiff's request for injunctive relief under Section 10 of the Administrative Procedures Act (APA), 5 U.S.C. § 702, also fails. That statute, which waives the defense of sovereign immunity in certain suits for equitable relief brought against federal agencies or federal officers in their offi-

cial capacities, *see Blassingame v. Secretary of Navy,* 811 F.2d 65, 69–70 (2d Cir.1987), *rev'd on other grounds following remand,* 866 F.2d 556 (2d Cir.1989), provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. For the purposes of this statute, an "agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

■ In essence, the APA allows an individual who alleges that the government "act[ed] arbitrarily, either substantively or procedurally," thereby causing him harm, to seek judicial review of that governmental action. *See B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 718 (2d Cir.1983) (*quoting Gonzalez v. Freeman,* 334 F.2d 570, 574 (D.C.Cir.1964)). In order to have standing to sue under this statute, however, a plaintiff must plead that "the challenged action has caused him injury in fact." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *see also Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972) ("[I]n *Data Processing* ... we held more broadly that persons had standing to obtain judicial review of federal agency action under § 10 of the APA where they had alleged that the challenged action had caused them 'injury in fact,' and where the alleged injury was to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated."). As the Supreme Court recently explained in *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990):

> [Section 702] contains two separate requirements. First, the person claiming a right to sue must identify some "agency action" that affects him in the specified fashion; it is judicial review "thereof" to which he is entitled.... Second, the party seeking review under § 702 must show that he has "suffer[ed] legal wrong" because of the challenged agency action, or is "adversely affected or aggrieved" by that action "within the meaning of the statute." ... [W]e have said that to be "adversely affected or aggrieved ... within the meaning" of a statute, the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effects *upon him* ) falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.

*Id.* at 882–83, 110 S.Ct. at 3185–3186 (emphasis in original).

In this case, plaintiff has failed to allege that the agency defendants or their directors have engaged in any agency actions that have a causal connection to any legal or statutory harm that he has suffered. *See In re United States Catholic Conference,* 885 F.2d 1020, 1023–24 (2d Cir.1989), *cert. denied,* 495 U.S. 918, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990). Plaintiff explains the "crux of [his] complaint" as follows:

> [T]he people directing several official agencies of the United States Government are deliberately and calculatingly organizing a secret war to thwart the Bill of Rights and to destroy all of these individuals and organizations that they have deemed undesirable. The illegally gathered information in their files along with the technological equipment at their disposal are the weapons being used to wage this illegal and immoral war. The responsibility of the United States courts in this matter is, therefore, quite clear.

(Complaint ¶ 13(c)). Specifically, he alleges that the agencies have created personality profiles of dissidents such as himself and have arbitrarily released those profiles to an "army of extremists" who engage in "an obsessive campaign of harassment" against him. Contrary to plaintiff's assertions and despite the specific examples his complaint now contains, plaintiff has failed to describe any official "agency action" which has caused the injuries he has suffered; his complaint does not allege how the defendant agencies or individuals have infiltrated or controlled his romantic relationships, the organizations to which he belongs, or the activities of vari-

ous New York City social service organizations, employers, landlords, or "deranged right-wing extremists, thugs, and stooges" who allegedly backfire their car engines and let off their car alarms. In sum, Platsky's conclusory allegations of conspiracy and resulting injury at the hands of various private actors who are somehow controlled by federal agencies do not present this court with a justiciable case or controversy under Article III, and no amount of repleading will remedy that fatal flaw in his complaint.[1]

## CONCLUSION

For the reasons provided above, plaintiff's complaint seeking damages and injunctive relief is hereby dismissed in its entirety.

**SO ORDERED.**

1. Quotation from the final colloquy during oral argument before this court is instructive:

   THE COURT: May I ask you just one more question, or maybe two more?
   Could you tell me specifically what it is that you're asking the Court to do? What precisely would you have me do?
   MR. PLATSKY: Most of these organizations have been kept under surveillance for years, if not decades. In situations where there has been no illegal activity, where there's no indication that's able to have been created, no indictments have been brought down where these organizations are clearly functioning within the limits of law and are constitutionally protecting these groups, and the agents and informants should be removed from the organization so they can no longer disrupt.
   These files that are being maintained on individuals, that have no legal purpose, where individuals are engaged in protected activity, these files should be destroyed so they do not fall or they are not placed into the hands of political extremists, as I have argued in my complaint has been repeatedly done by these defendants, and so that the people who are engaging in these activities can be protected from the harassment that I suffer from now as a daily thing.
   I'm talking about an army of people that literally follow me around and stalk me throughout the City, and this army is composed of the members of the New York Police Department and the Emergency Medical Services and the Fire Department. I can't believe it's a coincidence that all this activity started at the point where the F.B.I. came into the City, ostensibly to set up a Joint Task Force to defend the City against terrorism.
   Ms. Weiner might say it's a coincidence. The Court might argue I don't have proof. If I understand the Court's argument of the Court of Appeals, this is behavior that can be traced to the behavior of the defendants, and in the context of all the other arguments and facts in this matter I feel confident that an impartial jury could very well find that these defendants are indeed responsible for what takes place. This is much more than a coincidence.
   THE COURT: Were you followed here this morning by the Police Department and the Fire Department and the F.B.I.?
   MR. PLATSKY: I'm convinced that I cannot move one city block in any direction without these people knowing of my whereabouts. I'm convinced of that. I'm talking about something that's going on for so long now, there's no doubt in my mind that this is the case.
   THE COURT: Mr. Platsky, it's been nice to see you again this morning. You will be informed. Thank you very much.
   MR. PLATSKY: Thank you.
   (Tr. at 8–10).